**ELMENDORF et al. v. CITY OF SAN AN-TONIO et al. (No. 285–3535.)**

(Commission of Appeals of Texas, Section B. June 14, 1922.)

**1. Municipal corporations ⬤➡301—Resolution of city council necessary to give jurisdiction to order public improvements.**

Under Rev. St. 1911, art. 1008, providing that the governing body of any city shall have power to order the improvement of any highway therein, or part thereof, and under a procedure ordinance adopted by a city, providing ·that, whenever a city council shall determine to improve any highway, "it shall pass a resolution to that effect, and such resolution" shall invite bids on the proposed improvement, the passage of the resolution is necessary as a foundation for the proceedings for making street improvements.

**2. Municipal corporations ⬤➡444—Assessment of property abutting on street not described in resolution to improve streets void.**

Where a city council, in pursuance of Rev, St. 1911, art. 1008, and a procedure ordinance adopted by the council providing that, whenever a city council shall determine to improve any highway, it shall pass a resolution to that effect, etc., passed a resolution for the improvement of 78 streets and parts of streets, and one street not named in the resolution was named in the ordinance levying the special assessment and authorizing the issuance of the assessment certificate, the assessment for improving such street was not legal.

**3. Municipal corporations ⬤➡488, 489(5)—Property owner not barred from objecting to void assessment because his objection was not made in time limited by statute.**

Under Rev. St. 1911, art. 1015, providing that the property owner objecting to an assessment for street improvements must do so within 20 days after the assessment, a property owner is not precluded from objecting to an assessment for street improvements .which was void, since the assessment was void and created no charge on the property until suit was brought upon a certificate.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by the City of San Antonio and others against Mary Elmendorf and others. From a judgment of the Court of Civil Appeals reforming and affirming a judgment for plaintiffs (223 S. W. 631), defendants bring error. Reversed and rendered.

Otto Staffel, of San Antonio, for plaintiffs in error.

O. M. Fitzhugh and L. Allen, both of San Antonio, for defendants in error.

HAMILTON, J. The city of San Antonio brought suit against Mrs. Mary Elmendorf and her three adult children, Stella, Armin, and Edward Elmendorf, for the use and ben-efit of the Western Paving Company, on a paving certificate issued by that city to that company on April 12, 1915, by virtue of an assessment ordinance alleged to have been passed on March 1, 1915. The amount sued' for was $2,330.37, principal, with 8 per cent. interest and reasonable attorney's fees, alleged to be $1,000, and for foreclosure of an assessment lien on certain premises abutting on West Josephine street, San Antonio. The Western Paving Company afterwards intervened in its own right. Roy M. Beitel was made a codefendant as a purchaser pendente lite of a part of the premises. Judgment was rendered' on November 24, 1919, dismissing as to the city and in favor of the paving company against Mrs. Mary Elmendorf for principal, interest, and attorney's fees in the sum of $750, and for foreclosure of lien against all of the defendants. On November 29, 1919, a motion by the paving company to correct the judgment was granted, and the judgment was amended by dismissing as to Stella Elmendorf; it appearing during the trial that she was married, and her husband was not a party to the suit. Mrs. Mary Elmendorf. Armin Elmendorf, and Edward Elmendorf appealed, and the Court·of Civil Appeals reformed the judgment so as to provide that the aggregate sum of principal, interest, and attorney's fee shall bear interest at 6 per cent. per annum from the date of the judgment of the trial court and taxed the costs of appeal against the appellants. 223 S. W. 631.

Previous to the beginning of the improvements out of which the controversy resulting in this suit arose the city of San Antonio had adopted the act of the Legislature of the state of Texas incorporated in R. S. 1911, tit. 22, c. 11, arts. 1006–1017, as provided in article 1016 thereof, and the city council had passed on the 25th day of May, 1914, an ordinance—

"establishing a uniform plan under which all permanent paving and certain other permanent street improvements in this city shall be made and be paid for wholly or partly by special assessments; defining the procedure with reference to such·improvements and assessments; and prescribing certain rights and liabilities of property owners, contractors and others, and for other purposes."

Article 1008 of the Revised Civil Statutes reads:

"The governing body of any city shall have power to order the improvement of any highway therein, or part thereof, and to select the materials and methods for such improvement, and to contract for the construction of such improvements in the name of the city, and to provide for the payment of the cost of such improvements out of any available funds of the city, or as herein provided."

Section 5 of the ordinance above mentioned, reads:

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Whenever the city council shall determine to improve any highway as defined in said act, it shall pass a resolution to that effect, which shall be conclusive of the public necessity for such improvement, and such resolution shall invite bids on the proposed improvement and in general terms set forth the nature and extent of improvements to be made and the material or materials with which the improvements may be constructed; and such resolution shall also state when and where the plans, profiles and specifications will be ready for inspection of bidders, and the amount of the checks required to accompany bids, and with whom such bids and checks shall be filed, and the date and the hour when such bids will be opened, and shall contain also clear reference to this ordinance, by reciting the date and caption thereof, and shall state such other matters as the city council may deem appropriate. Such resolution may indicate different and alternative materials with which said improvements may be constructed and different and alternative plans and methods of constructing and paying for same."

Section 6 provides that—

"Upon the passage of such resolution it shall be the duty of the city engineer or such other engineer as may be designated by the city council, forthwith to prepare plans, profiles, specifications and proposals for said improvements, which shall embrace the different or alternative materials and methods of construction mentioned in said resolution. Said plans, profiles, specifications and proposals shall be submitted to and approved by the city council or its committee on public improvements."

Section 7 says:

"When said plans, profiles and specifications and proposals have been thus approved it shall be the duty of the city clerk to advertise at once for sealed bids for the performance of the work in accordance with said plans, profiles and specifications. Such advertisement shall consist of a copy of the resolution for improvement, without certificate of true copy, but with the addition of such other appropriate matter as the city clerk may deem necessary, and shall be authenticated by signature of the city clerk on behalf of the city"

—and provides for the manner and length of time of publication.

Section 8 provides for the filing, opening, reading, acceptance, and rejection of bids.

[1] It will be observed that the statute, article 1008, made section 3 of the Street Improvement Law, says that "the governing body of any city shall have power to order the improvement of any highway therein, or part thereof," and that the procedure ordinance, section 5, provides that, "whenever the city council shall determine to improve any highway as defined in said act, it shall pass a resolution to that effect and such resolution shall invite bids on the proposed improvement and in general terms set forth the nature and extent of the improvements to be made," etc. This resolution is the foundation upon which all the proceedings for the accomplishment of a proposed improvement is made to rest.

Without it nothing legal can be done; no bids can be invited, no plans, profiles, and specifications can be prepared, no advertisement for bids can be made, and consequently no filing, opening, reading, or acceptance of bids can be had, and no valid contract for the improvement of a street or highway which has not thus been ordered or determined to be improved can be entered into by the city. Without a resolution or ordinance ordering the improvement of a street, none of the steps provided by the ordinance to be taken preparatory to the contract can be taken. The resolution is primary, fundamental, and jurisdictional. Without it the city acquires no jurisdiction over either the abutting property or over the owners thereof, and therefore cannot make a valid assessment against either, and can create no lien on the property and impose no personal obligation upon the owner or owners.

[2] Before the work for which the certificate sued on in this case was begun the city council of San Antonio passed "a resolution ordering street improvements and inviting bids for such work consisting of paving and other work on 78 streets," the first paragraph of which reads:

"Be it resolved by the city council of the city of San Antonio that a public necessity exists for the improvement of each street and public place in said city named hereunder, and that it be and is hereby ordered that the same be improved in the manner hereinafter stated, and that special assessments shall be made and levied as provided by law and ordinance on account of the cost of such improvements on each such street or public place, to wit."

Then follow the names of 78 streets and parts of streets, the nature and extent of the improvements to be made and the materials with which the improvements may be constructed, the place and time where and when the plans, profiles, and specifications may be seen, and invitations for bids, all as prescribed by the "procedure ordinance" above noted.

The sixth and last paragraph of this resolution is as follows: :

"Said improvements and the bids, arrangements, contract and bonds in connection with said work, and payment for said work, shall be made under and governed by the provisions of an ordinance of the city council of the city of San Antonio, known as the 'procedure ordinance,' passed and approved on December 18, A. D. 1913, entitled, 'An ordinance establishing a uniform plan under which all permanent paving and certain other permanent street improvements in this city shall be made and be paid for wholly or partly by special assessments; defining the procedure with reference to such improvements and assessments; and prescribing certain rights and liabilities of property owners, contractors and others, and for other purposes.'"

West Josephine street is nowhere named among the 78 streets ordered in that resolu-

tion to be improved. The forty-third street named therein is "Josephine street from the river to River avenue." This is the only instance in which the word Josephine appears in the designation of any of the streets named in the resolution. Therefore "West Josephine street from Jones avenue to the San Antonio river" was not named in that resolution. No other resolution for street improvements was passed.

The ordinance levying the special assessment and authorizing the issuance of the assessment certificate sued on designates the street for the improvement of which the assessment was made as "West Josephine street from. Jones avenue to San Antonio river." The copy of the notice by publication appearing in the record shows that "notice to property owners on West Josephine street between Jones avenue and San Antonio river" was given. The property of plaintiffs in error against which it is sought to fix and foreclose a lien was situated on West Josephine street according to the record and according to the findings of the Court of Civil Appeals. It was proved on the trial of the case that "the portion of Josephine street between the river and River avenue" is called "East Josephine street," and that the river is the dividing line between East Josephine and West Josephine streets.

The city council of San Antonio did not pass a resolution determining to improve West Josephine street. No bids were invited "on the proposed improvement," because there was no "such resolution," and therefore "no such proposed improvement." It was never legally stated "when and where the plans, profiles, and specifications would be ready for inspection of bidders, nor the amount of the checks required to accompany bids, nor with whom such bids and checks should be filed, nor the date nor the hour when such bids would be opened, because there never was such a resolution passed determining to improve "West Josephine street from Jones avenue to the river," and all these things must have been done, set forth, and stated in a resolution passed by the city council to the effect that it had determined to improve that street before any such proceedings could be of any effect or have any validity. This is true because the city council of San Antonio so legislated, as shown by section 5 of the "procedure ordinance" above set out. No valid plans, profiles, and specifications for any improvements could have been prepared by the engineer until such resolution had been passed, because such engineer could not otherwise have known "the nature and extent of the improvements to be made and the material or materials with which the improvements were to be constructed." Section 5 of the procedure ordinance provides that—

"Whenever the city council shall determine to improve any highway, as defined in said act,

it shall pass a resolution to that effect" setting forth "the nature and extent of improvements to be made and the material or materials with which the improvements may be constructed."

Section 6 of the ordinance provides that—

"Upon the passage of such resolution it shall be the duty of the city engineer * * * forthwith to prepare plans, profiles and specifications and proposals for said improvements which shall embrace the different or alternative materials and methods of construction mentioned in said resolution."

Without such resolution there could have been no advertisement for bids, because section 7 of the procedure ordinance prescribes that—

"Such advertisement shall consist of a copy of the resolution for improvement."

Nor could there have been any bids because the proposals must be "in such form as shall be furnished" by the engineer, and such proposals must be based on the contents of the resolution as provided in section 6 of the "procedure ordinance." In short, since the governing body of San Antonio did not "order the improvement" of West Josephine street, as it was empowered to do by article 1008 of the Revised Civil Statutes, and as it was specifically required to do by section 5 of the procedure ordinance, it had no jurisdiction to do anything binding upon either the property or persons of the plaintiffs in error and all its attempts so to do were null and void from the beginning. City of Waco v. Prather, 90 Tex. 80, 37 S. W. 312; City of Waco v. Chamberlain, 92 Tex. 207, 47 S. W. 527; Steinmuller v. Kansas City, 3 Kan. App. 45, 44 Pac. 600; Crane v. Siloam Springs, 67 Ark. 30, 55 S. W. 955.

"The city, by its ordinance having prescribed these proceedings, must pursue them, in order to bind the property holder and render him [or the property] liable for the cost of the work. The city cannot be exempted from the duty of obeying its own law. It has prescribed the steps to be taken which will give it jurisdiction to levy assessments. * * * The citizen cannot be bound unless the authority be exercised in the manner prescribed." Zalesky v. City of Cedar Rapids, 118 Iowa, 714, 92 N. W. 657.

As said by Judge Gaines in the case of Flewellin v. Proetzel, 80 Tex. 191, 15 S. W. 1043:

"It is not to be doubted that in order to enable a municipal corporation to charge the owners of property abutting on a street with the cost of its improvement the power must not only be expressly conferred by law, but the provisions of the law must be strictly pursued. The successive steps directed to be taken preliminary to ordering the work to be done, the manner of letting the contract, and the mode of constructing the improvement, when provided for in the law, are intended for the protection of the property owner and are his safe-

guards against the exercise of arbitrary power. Each act required to be done is essential to the exercise of the jurisdiction, and each must be rigidly performed. The courts cannot say that the omission of some requirement is unimportant, or that an act different from that directed is substantially as good. The effect of the proceeding being to charge the property of the citizen with a burden for the public benefit, the requirements of the law as to the exercise of the power should be deemed mandatory."

Section 3 of the procedure ordinance deals with the "legal construction of the ordinance," and, among other provisions, contains the following:

"And for a better understanding of this ordinance it is hereby declared that same is intended to contain, among other provisions (1) provisions of a contractual and mandatory nature which define certain duties and liabilities of bidders and contractors; and (2) provisions of a contractual and mandatory nature for the benefit of contractors and holders of assessment certificates, whereby the city of San Antonio shall be bound and obligated to do certain things in the way of making assessments, levying special taxes, making reassessments and corrections of assessments, and in making other provisions for the assessment and collection of amounts payable on account of such improvements; and (3) provisions of a directory character as to procedure to be adopted by city officials and the city council with reference to making improvements and assessments, and while same are to be observed, yet no inadvertent failure of any official or of the city council to observe any such requirement or requirements shall be deemed to invalidate any bid or contract if same be otherwise sufficient in law, or to invalidate any assessment or levy if the proceedings actually had been sufficient under said street improvement law."

It is urged that "section 5 relates to a provision classified as of a directory character." We cannot agree to such a construction of section 5. There is no classification of the various sections of the ordinance made in terms other than the language set out above. It does not undertake to say what portion of it is directory nor what portion is mandatory. If the ordinance had expressly provided that stipulations in section 5 et seq. concerning a resolution should be construed as merely directory, the omission of the city council to pass such resolution would have rendered void any proceeding to fix the liability of plaintiffs in error for the cost of any improvements of West Josephine street made by the city because the statute (article 1008) merely gives the governing body "power to order the improvement of any highway therein." The statute gives the city no power independent of the power "to order improvements," and such improvements cannot be made and the liability of abutting owners fixed without such order, and no order of any kind either by ordinance, resolution, or by vote of the council is shown by the record in this case

to have been made by the city council. But the provision of the ordinance requiring a resolution is not directory. It is mandatory. The language of section 3 above set out adds nothing to, and subtracts nothing from, the character of that provision. A resolution providing for the improvement of West Josephine street was necessary as a foundation for any valid assessment of costs for such improvements, and without it everything looking thereto collapsed and became a mass of meaningless phrases. Without it "the proceedings actually had were" not "sufficient under said street improvement law," and therefore, by the very terms of section 3, could not be directory.

[3] The Court of Civil Appeals held, and it is urged here, that—

"If the objection to the assessment could be held sufficient ground upon which to base an attack, the failure to make the same upon the hearing or in a suit brought within 20 days thereafter, as provided in article 1015, R. S. 1911, would preclude the owners from relying upon such objection as a defense to a suit upon the certificate."

The statute reads:

"Any property owner, against whom or whose property any assessment or reassessment has been made, shall have the right, within twenty days thereafter, to bring suit in any court having jurisdiction, to set aside or correct the same, or any proceeding with reference thereto, on account of any error or invalidity therein. But thereafter such owner, his heirs, assigns or successors, shall be barred from any such action, or any defense of invalidity in such proceedings or assessments or reassessments in any action in which the same may be brought in question."

We think this statute should be held to apply only to such defects and irregularities in the proceedings as would render the assessment or reassessment voidable, and not void. It cannot be supposed to aid an assessment which is void on jurisdictional grounds, as shown on the face of the proceedings. The assessment, in this case, and all "the proceedings with reference thereto," in so far as they concern the right of the city to impose any cost of improvements on plaintiffs in error, are mere nullities having no more life, force, or power than if they had never been attempted. Being such, plaintiffs in error could entirely ignore them as ineffectual to create any charge upon their property. Not until suit was brought upon the certificate, which would culminate, by default on their part, in a judgment against them and their property, did they have any cause for complaint. This provision as to limitation of the time after which the owner "shall be barred from an action or defense" confers no rights upon the city.

"Like all limitation laws, it does not affect the cause of action. It simply destroys the

remedy, denying relief to him who has unreasonably slept upon his rights, and leaving the parties where it found them. In no case is it effective to create a cause of action where none existed, nor is it operative except as against one who has an existing right of action during the period of limitation. How, then, in this case, can it be said that plaintiffs in error are barred by a failure to institute proceedings at a time when they had no legal ground for complaint, and therefore no right of action? As the proceedings which led up to the assessment were had without jurisdiction, and consequently without any legal effect upon the property rights of plaintiffs [in error], the mere failure to act certainly could not alter the situation of either party. As said in McCoy v. Anderson, 47 Mich. 505 [11 N. W. 290]: 'Any other view would be open to the objection of attempting to deprive parties of their property without due process of law, and this evidently was not contemplated by the statute relied upon.' One may ordinarily wholly disregard void proceedings, so long as no attempt is made to enforce them. City of New Haven v. Fair Haven & W. Ry. Co., 38 Conn. 422; Williams v. Saginaw, 51 Mich. 120 [16 N. W. 260]. It necessarily follows, as void proceedings affect nothing, that legal rights cannot grow out of them by mere lapse of time, without the introduction of other circumstances or conditions affecting the parties." Steinmuller v. Kansas City; supra; Crane v. Siloam Springs, supra.

"A statutory provision that suit to set aside or enjoin the making of an assessment shall be brought within a specified time is constitutional, and an action brought after the expiration of such designated period will not be entertained; but such a statutory limitation will not apply where the assessment is based upon absolutely void proceedings." 28 Cyc. p. 1188.

We hold that the assessment was void, as above indicated, and therefore further hold that the defense was not barred by the statute.

In view of these holdings we recommend that the judgment of the Court of Civil Appeals and that of the trial court be reversed, and that judgment be rendered that plaintiffs take nothing by this suit.

CURETON, C. J. Judgments of the Court of Civil Appeals and of the district court both reversed, and judgment rendered in favor of plaintiffs in error.