### JOHNSON v. LINDSAY et al.

No. 12307.

Court of Civil Appeals of Texas. Fort Worth.
April 19, 1930.

Rehearing Denied May 24, 1930.

Ray Winder and Cecil Murphy, both of Gainesville, for appellant.

John W. Culp, of Gainesville, for appellees.

DUNKLIN, J.

By virtue of the provisions of chapter 18, title 28, Rev. Civ. Statutes, an incorporated city or town of more than 5,000 inhabitants is authorized to improve its public streets by installing and maintaining a special lighting system thereon upon a resolution passed by the governing body of such city or town, upon a petition for such improvements filed by a majority of the owners of the property abutting on such street. That chapter of the statutes begins with article 1221 and ends with article 1240, and the necessary steps to be taken are provided for in those articles.

A petition, filed by the requisite number of property owners, was presented to the city council of Gainesville for the installation and

maintenance of such a lighting system on one of the public streets in that city on which certain lots owned by L. B. Lindsay and Mrs. J. T. Embrey, a single woman, abutted. In compliance with that petition, the city council of Gainesville passed a resolution authorizing the installation of the lighting system on those streets, and it made an assessment against the "Lindsay estate" in the sum of $492.15, with interest at the rate of 7 per cent. per annum, on September 15, 1925, and provided for the payment by said owner of a pro rata part of the cost of improvements and also fixing a lien upon the property abutting on the street so owned by L. B. Lindsay and Mrs. J. T. Embrey.

This suit was instituted by J. M. Johnson, the contractor who constructed and installed said lighting system, under a contract entered into by and between him and the city; the contract for making such improvements having been let to Johnson by the city council; and a recovery was sought on the certificates issued by the city in favor of Johnson for the improvement, purporting to fix a lien on the lots as against the "J. M. Lindsay estate," and also purporting to fix personal liability for said assessment against the "J. M. Lindsay estate," which certificates were attached to plaintiffs' petition and made a part thereof.

L. B. Lindsay and Mrs. J. T. Embrey were made parties defendant to the suit, and plaintiff sought a recovery of a personal judgment against each of them for one-half of said assessments with interest and attorneys' fees, and also for a foreclosure of a statutory lien provided for in the statutes referred to above. From a judgment denying plaintiff any recovery, he has prosecuted this appeal.

The case was tried before the court without a jury, and the trial judge filed findings of fact and conclusions of law. No statement of facts has been brought up in the record, and the facts so found by the trial judge are accepted as true by all parties to this appeal. The findings of fact and conclusions of law of the trial court are as follows:

"Findings of Fact.

"1. That the property involved in this suit upon which plaintiff has sought the foreclosure of a lien alleged to have been created by reason of an assessment for an artificial lighting system under chapter 18, Rev. Civil Statutes, 1925, was, at the time of all proceedings of the city council of the City of Gainesville, relating to such assessment, owned jointly by defendants L. B. Lindsay and Mrs. J. T. Embrey, each owning an undivided one half interest therein. That said property was previously a part of the community property of the father and mother of said defendants, namely, J. M. Lindsay, who died testate on the 3rd day of May, 1919,

and his wife, Tennie B. Lindsay, who died testate on the 7th day of March, 1922, and the title to said property vested in said defendants, L. B. Lindsay and Mrs. J. T. Embrey, by reason of the terms of the wills of their said parents.

"2. That in addition to the property involved in this suit, which is known as the Tanner Furniture Company building, the Majestic Theater Building, and the Lindsay Hotel Building, said defendants L. B. Lindsay and Mrs. J. T. Embrey inherited from their said parents, J. M. Lindsay and Tennie B. Lindsay, both deceased, and owned jointly at the time of all proceedings of the city council of the city of Gainesville, relating to said assessment, approximately 34 separate tracts and parcels of land in the City of Gainesville, Cooke County, Texas, which were assessed for state and county taxes for the year 1925 at a valuation of more than $61,000.00.

"3. The estate of both of said decedents, J. M. Lindsay and Tennie B. Lindsay, were closed several years prior to the institution of said proceedings relating to the assessment for the artificial lighting system involved in this suit.

"4. That the physical condition of the said Mrs. J. T. Embrey is such that she is not capable of handling her said property and from the time of the closing of the estates of J. M. Lindsay and Tennie B. Lindsay, both deceased, to the trial of this cause the defendant L. B. Lindsay has managed and controlled the said joint property of himself and Mrs. J. T. Embrey in the following respects, towit: He has rendered such property for taxation to both the city tax assessor of Gainesville, Texas, and the county tax assessor of Cooke County, Texas, and the same has been assessed and the taxes thereon paid by him, in the name of the 'J. M. Lindsay estate.' He alone has rented and leased such property and has collected the rents and revenues from the same. He has attended to the repairing and improvement of such property and an account has been carried with the Waples Painter Lumber Company of Gainesville, Texas, in the name of the 'J. M. Lindsay estate,' covering supplies and materials purchased by him from such company for the repair and improvement of said joint property. He also has carried an account in the Lindsay National Bank of Gainesville, Texas, in the name of the 'J. M. Lindsay Estate' and he alone has drawn checks on such account. He has maintained an office in the Lindsay Hotel building where he keeps a set of books showing the income and revenue for each piece of such joint property and the money expended on such, and at intervals he accounts to Mrs. J. T. Embrey for the net proceeds due her therefrom.

"5. The said L. B. Lindsay and Mrs. J. T. Embrey each own certain real estate and oth-

er property in Cooke County, Texas, which is their separate property, and not included in the said joint property.

"6. In the proceedings of the city council relative to creating a personal liability against said defendants L. B. Lindsay and Mrs. J. T. Embrey and fixing a lien against their said property for their pro rata part of the costs of the construction of the artificial lighting system, neither of said defendants were named or designated as owners of said property and the only expression used in said proceedings, including the resolutions and ordinances passed, and the published notice which was given, to indicate the owners of said property and the only expression used in said proceedings, including the resolutions and ordinances passed, and the published notice which was given, to indicate the owners of said property, was the term 'J. M. Lindsay Estate,' with such exception all of the said proceedings of the city council from the first preliminary step to the final act were in all respects regular.

"7. That defendant L. B. Lindsay filed with the city council of the city of Gainesville on or before the date of its hearing as to the benefit and all other matters relating to said proposed improvement, a general protest, in writing, against the lighting system and the levying of an assessment therefor, which protest was duly heard and overruled by the city council. That no suit was ever instituted by said defendants, or either of them, contesting the validity, in whole or in part, of said assessment as levied.

"8. That on or about the 31st day of March, 1927, after the completion of the artificial lighting system and its acceptance by the city of Gainesville, the plaintiff J. M. Johnson presented defendant, L. B. Lindsay, with a bill or statement of the indebtedness due plaintiff, J. M. Johnson, by the "J. M. Lindsay estate" on account of the assessment of the artificial lighting system. That no payments have ever been made by said defendant on account of the installation of said artificial lighting system. That said assessment against said defendants and their said property amounts to $492.15, with interest thereon at the rate of seven per centum per annum from September 15, 1925, and that plaintiff has declared the entire amount of the assessment to be due.

"9. That a reasonable attorney's fee to be allowed plaintiff in the event of a recovery in this suit is the sum of One Hundred Dollars.

"Conclusions of Law.

"I conclude, as a matter of law, that the notice as published in the name of the J. M. Lindsay Estate, of the contemplated assessment for the artificial lighting system, and the said assessment, as levied in a lump sum against the J. M. Lindsay estate and not against each of the said defendants according to their respective interests in said property, were insufficient, and the assessment was therefore void.

"I further conclude that no personal liability was created against said defendants, L. B. Lindsay and Mrs. J. T. Embrey, or either of them, and that no lien was fixed against their said property, by reason of said proceedings of the city council.

"B. W. Boyd,
"District Judge Cooke County, Texas."

Error has been assigned to the conclusions of law so reached by the trial judge. Articles 1224 to 1229, inclusive, provide for the passage of a resolution by the city council, setting forth the nature and extent of improvements, the streets to be improved, etc., the preparation of plans and specifications for the improvements by the city engineer; the adoption of such plans by the city council and the advertisement of bids for the construction of the work; the letting of the contract upon the most acceptable bid; the assessment of the costs of improvement against the owners and the mode of assessment.

Following are articles of chapter 18:

Article 1230: "The contract or contracts for such improvements having been executed and approved by the governing body, the city engineer, or the officer of the city whose duties most nearly correspond to that of city engineer, shall prepare a written statement which shall contain the names of such persons, firms, corporations or estates as may own property abutting on the section to be improved, the number of front feet owned by each, and describing the property owned by each, either by lot and block number, or otherwise so describing such property as may be sufficient to identify same; and such statement shall contain an estimate of the total cost of the improvement, the amount per front foot to be assessed against abutting property and its owners, and the total estimated amount to be assessed against each owner. Such statement shall be submitted to the governing body whose duty it shall be to examine same and correct any errors that may appear therein, but no error, omission or mistake in said statement shall in any manner invalidate any assessment made, or lien or claim of personal liability fixed thereunder."

Article 1231: "When the statement shall have been examined and approved by the governing body, it shall declare by resolution, and directing notice thereof to be given to the owners aforesaid by publication for ten consecutive days in a daily newspaper of general circulation in the city where the improvement is to be made; but if there be no daily newspaper in such place, then the governing body shall give such notice to such owners by registered mail at least ten days before the

time set for the hearing as hereinafter provided. The notice shall state the time and place of the hearing and the street, streets or portions thereof to be improved, with a general description of such improvements and a statement of the amount per front foot proposed to be assessed against the property, and a notice to all such property owners and all persons interested to appear at such hearing. It shall not be necessary to include in such notice a description of any property or the name of the owner, but such notice shall nevertheless be binding and conclusive upon all owners of property, or persons interested in or having a lien or claim thereon."

Article 1232: "On the day set out in the notice for the hearing, not less than ten days from the date of such notice, or at any time thereafter before the close of the hearing, any person, firm or corporation interested in any property which may be claimed to be subject to assessment for the purpose of paying the cost of the improvement, in whole or in part, shall be entitled to a hearing before the governing body as to all matters affecting said property, or the benefits thereto, or such improvements, or any claim of liability, or objection to the making of said improvements, or any invalidity or irregularity in any proceeding with reference to making said improvements, or any other objection thereto. Such person, firm, or corporation shall file their objections in writing, and thereafter the governing body shall hear and determine the same, and all persons interested shall have full opportunity to produce evidence and witnesses and appear in person or by attorney; and a full and fair hearing thereof shall be given by such governing body, which hearing may be adjourned from time to time without further notice. The governing body shall have the power to inquire into and determine all facts necessary to the adjudication of such objections and the ascertainment of the special benefits to such owners by reason of the contemplated improvements; and shall render such judgment or order in each case as may be just and proper. Any objection to the irregularity of the proceedings with reference to the making of such improvements as herein provided, or to the validity of any assessment or adjudication of personal liability against such property or the owners thereof, shall be deemed waived unless presented at the time and in the manner herein specified."

Article 1233: "When the hearing above mentioned has concluded, the governing body shall, by ordinance, assess against the several owners of the property abutting on the street, streets or portions thereof, such proportionate part of the cost of improvements as said body shall have adjudged against the respective owners and their property. Said ordinance shall fix a lien upon such property and declare the respective owners thereof to be personally liable for the respective amounts to be assessed; and shall state the time and manner of payment of such assessment; and said governing body may order that the said assessments shall be payable in installments, and prescribe the amount, time and manner of payment of such installments, which, except as hereinafter provided, shall not exceed six, and the last payment shall not be deferred beyond five years from the completion of such improvement and its acceptance by the city. The said ordinance shall also prescribe the rate of interest to be charged upon deferred payments, not to exceed seven per cent per annum; and may provide for the maturity of all deferred payments and their collection upon default of any installment of principal or interest."

Article 1234: "Each property owner shall have the privilege of discharging the whole amount assessed against him, or any installment thereof, at any time before maturity, upon payment thereof with accrued interest. The fact that more than one parcel of land, the property of one owner or jointly owned by two or more persons, firms or corporations, have been assessed together in one assessment, shall not invalidate the same or any lien thereon, or any claim of personal liability thereunder. The cost of any such improvement assessed against any property or owner thereof, together with all costs and reasonable attorneys fees when incurred, shall constitute a personal claim against such property owner, and shall be secured by a lien on such property superior to all other liens, claims, or titles, except city, county and State taxes, and such personal liability may be enforced by suit in any court of competent jurisdiction. In any suit brought under this article, it shall be proper to join as defendants two or more property owners who are interested in any single improvement or any single contract for such improvement. The person or persons who own property at the date of any ordinance providing for the assessment thereof, shall be severally and personally liable for their respective portions of the said assessment. The lien of such improvements shall revert back and take effect as of the date of the original resolution ordering the improvement, and the passage of such resolution shall operate as notice of such lien to all persons. Any error or mistake in such ordinance in the name of the owner of the property assessed, shall not invalidate the lien or personal liability thereby created, but the same shall nevertheless exist against the real and true owner of such property as if correctly described."

Article 1237: "The governing body may provide that for the cost, which is assessed against the abutting property and its owners, the contractor to whom the work may be let shall look only to such property owners

and their property, and that the city shall be relieved of liability for such cost. The governing body may also authorize assignable certificates against abutting property or property owners. The recital in such certificates that the proceedings with reference to making such improvements have been regularly had in compliance with the terms of this law, and all prerequisites to the fixing of this lien and the claim of personal liability evidenced by such certificate, have been performed, shall be prima facie evidence of the facts so recited, and no other proof thereof shall be required, but in all courts the said proceedings and prerequisites shall, without further proof, be presumed to have been had or performed. Such certificates shall be executed by the chief executive of the city, and attested with the corporate seal by the city secretary or such other officer as may be designated by the governing body."

█ It will be noted that in article 1231, requiring notice of the hearing therein referred to, it specially provides that: "It shall not be necessary to include in such notice a description of any property or the name of the owner, but such notice shall nevertheless be binding and conclusive upon all owners of property, or persons interested in or having a lien or claim thereon."

Hence, we do not believe that L. B. Lindsay and Mrs. J. T. Embrey can challenge the sufficiency of the notice by reason of the fact that the published notice designated the property in controversy as belonging to the "J. M. Lindsay estate."

█ However, the service of notice was only one of the initial steps in the proceedings; and it was incumbent upon the city to comply with the further requirements of the statutes before the asserted claims of lien and personal liability of the owner could accrue. The succeeding steps taken by the city council in the proceedings, shown in the court's findings, were in violation of the requirements of articles 1233 and 1234 of the Statutes, because, first, the administration of the "J. M. Lindsay estate" had long since been closed and the property formerly belonging to that estate was then vested in L. B. Lindsay and Mrs. J. T. Embrey. Such being true, the "J. M. Lindsay estate" was not a legal entity against which there could have been any valid assessment of lien or personal liability. And the assessment being against the "J. M. Lindsay estate" instead of against L. B. Lindsay and Mrs. J. T. Embrey, the owners of the property, it was in violation of the provisions of both of those articles. Second, even though it could be said that the assessment was in legal effect an assessment against L. B. Lindsay and Mrs. J. T. Embrey rather than against the "J. M. Lindsay estate," still by the resolution of the city council the lien was fixed against the entire property as a whole for the entire assessment instead of against each half for one-half of the assessment; and a joint and several personal liability was fixed against those owners for the entire amount of the assessment instead of such personal liability being limited to one-half thereof as against each owner, all of which was in violation of the provisions of those two articles, and thus denied each of the owners the right given by article 1234 to discharge the whole amount assessed against him or her, or any installment thereof, and thus free his or her property from the lien at any time before the maturity of the assessments, upon the payment thereof with accrued interest.

Provisions of articles 1233 and 1234, just referred to, were mandatory and jurisdictional, and not directory; and a failure of the city to comply with them rendered the assessments void and wholly ineffective to fix personal liability against the appellees for the amounts of the assessments, and also ineffective to fix the statutory lien on the property in controversy to secure the same. This conclusion is fully supported by the decision in City of Mexia v. Montgomery (Tex. Civ. App.) 7 S.W.(2d) 594, in which a writ of error was refused by the Supreme Court. In that case an assessment for street pavement was made against Mrs. Montgomery as the sole owner of the property, when in fact she only owned a half interest in the property, the other half being owned by her minor son. That opinion is well supported by other decisions cited in the opinion, including City of Paris v. Tucker, 101 Tex. 99, 104 S. W. 1046; City of Dallas v. Atkins, 110 Tex. 627, 223 S. W. 170; Uvalde Rock Asphalt Co. v. Lyons (Tex. Civ. App.) 289 S. W. 202.

In Page and Jones, on Taxation by Assessment, vol. 2, § 890, the following is said: "Where the former owner of land is dead, and his interest descends to his heirs, it is frequently sought to assess such land as an entire tract in the name of the former owner, or in the name of his estate. Under statutes requiring the property to be assessed in the name of the owner, an assessment of property in the name of the estate of the deceased owner is invalid."

In Griffin v. City of Waxahachie, 276 S. W. 201, by the Commission of Appeals, it appeared that the governing body of Waxahachie, on January 6, 1920, passed a resolution ordering pavement on the streets in that city. After competitive bids were submitted, the contract for paving the streets was let to the Texas Bitulithic Company. Notice to the owners of property in the city was published in April, 1920, in a newspaper, as required by the statutes. Emma Griffin was then the sole owner of certain property fronting on one of the streets to be paved. She died intestate on September 20, 1920, and title to the property passed to her sons, Geo. L., Robert B., and James P. Griffin. On May 3, 1921, an ordi-

nance was passed by the city council assessing $1,093.45 against the property which had thus been inherited by those heirs, and which abutted on the street that the city council had ordered paved. That ordinance recited that the assessment was made against the property, and it also charged the amount so assessed against those heirs as their personal liability. The assessment was made against the "estate of E. H. and Emma Griffin." It was held that the proceedings taken before the death of Mrs. Emma Griffin and at the time she was the sole owner of the property were sufficient to fix a statutory lien thereon for the amount assessed, but that the fixing of personal liability against the heirs was void and the judgment of the trial court was so reformed as to accomplish that result, notwithstanding the fact that the heirs appeared at the hearing held under provisions of article 1232 and protested said proceedings by the city council.

In Elmendorf v. City of San Antonio, 242 S. W. 185, by the Commission of Appeals, it was held that an assessment against property abutting on a certain street was void because that street was not included in the initial resolution ordering the streets to be paved; that resolution including 78 streets, but not including West Josephine street, which latter was afterwards included in the special assessment ordinance and against which a paving certificate sought to be enforced, was issued.

Appellant invokes the following curative provisions of the statutes in support of his contentions that the judgment of the trial court should be reversed, to wit, the last sentence of article 1232, reading as follows: "Any objection to the irregularity of the proceedings with reference to the making of such improvements as herein provided, or to the validity of any assessment or adjudication of personal liability against such property or the owners thereof, shall be deemed waived unless presented at the time and in the manner herein specified."

And the last sentence of article 1234, reading as follows: "Any error or mistake in such ordinance in the name of the owner of the property assessed, shall not invalidate the lien or personal liability thereby created, but the same shall nevertheless exist against the real and true owner of such property as if correctly described."

In Page and Jones, on Taxation by Assessment, vol. 2, § 879, and other sections following, there is a discussion of the power of the Legislature to embody, in statutes of the kind under consideration, curative provisions removing objections for failure to comply with other provisions of the statutes. In the text a distinction is made between provisions which are jurisdictional and others, the violation of which would be mere irregularities. The text and the authorities cited in support thereof are to the effect that, since a special assessment results in deprivation of a property right given under the general laws, compliance with the statutes authorizing the same is jurisdictional, and a noncompliance therewith renders the assessment void and cannot be cured by such curative enactments.

The following is quoted from Sutherland on Statutory Construction, § 454: "Mandatory statutes are imperative; they must be strictly pursued; otherwise, the proceeding which is taken ostensibly by virtue thereof will be void. Compliance therewith, substantially, is a condition precedent; that is, the validity of acts done under a mandatory statute depends on a compliance with its requirements. * * * *"

Section 455 says: "When the power to affect property is conferred by statute upon those who have no personal interest in it, such power can be exercised only in the manner and under the circumstances specified. The requirement can never be dispensed with as being directory where the act, or omission of it, can by possibility work injury, however slight, to any one affected by it. Provisions are directory where they relate to some immaterial matter not of the essence of the thing to be done; where a compliance is matter of convenience rather than substance; where the departure from the statute will cause no injury to any person affected by it."

Section 456 reads: "The special powers given to corporations, to courts or officers, must be exercised with strict, substantial adherence to all directions of the statute. * * * In statutory proceedings the statute must be substantially complied with; every act required which is jurisdictional, or of the essence of the proceedings, or prescribed for the benefit of the party to be affected thereby, must be done; the requirement is mandatory."

It would be violative of a right of owners of property, accorded by the general laws of the land, to fix a lien of this character on their property and also to fix a personal liability against them for the amount of the assessment against their consent, without compliance with the terms of the statutes conferring that right upon the governing body of the city; and such proceedings being void, they could not be validated by the curative provisions of articles 1232 and 1234, set out above. As said in Cooper v. Bozeman, 54 Mont. 277, 169 P. 801, 803: "Certain it is that the Legislature cannot breathe the breath of life into a dead thing." And, as announced in Page and Jones, on Taxation by Assessment, vol. 2, § 950: "In order to be effective, the curative act must not itself be unconstitutional." And in Elmendorf v. City of San Antonio, 242 S. W. 185, cited above, the Commission of Appeals held that the provisions of article 1235, barring the right of a property owner to con-

test the assessment proceedings for an artificial lighting system, unless a suit be brought therefor within ten days after the hearing, was not applicable as the proceedings so taken in that case were void.

For the reasons indicated, the judgment of the trial court is affirmed.

### On Motion for Rehearing.

■ Appellant stresses this provision of article 1234 of the Statutes, set out in our original opinion: "The fact that more than one parcel of land, the property of one owner or jointly owned by two or more persons, firms or corporations, have been assessed together in one assessment, shall not invalidate the same or any lien thereon, or any. claim of personal liability thereunder."

It is insisted that by virtue of the very letter of that provision the assessment of the property in controversy and fixing a lien thereon against the "J. M. Lindsay Estate," as its owner, and also fixing personal liability of that owner for the amount of the assessment, was all duly authorized, and therefore the same cannot be disturbed.

■ If that construction be adopted, then it would follow that the undivided one-half interest owned by either L. B. Lindsay or his sister, Mrs. J. T. Embrey, could be burdened with a lien for the entire amount of the assessment, and that personal liability would be fixed against them jointly and severally for the whole of the assessment. So to do would be a violation of the due process provision of the federal Constitution. And when all those statutes are considered as a whole, as they should be, we believe it manifest that the Legislature never intended that the statutory provision quoted should be construed as having the meaning insisted on by appellant; especially as that would be in conflict with other provisions to the effect that the property of different owners and their respective personal liabilities for the assessments should all be separately assessed, and that each owner shall have the right to discharge his property and his personal liability by paying off the amount assessed against his property, as provided in the first sentence of article 1234, which is the extent to which the Legislature had constitutional authority to go.

■ Another point urged by appellant is based on the fact found by the trial judge that L. B. Lindsay had general authority from Mrs. Embrey to look after and manage the property, collect the rents therefrom, to pay taxes thereon out of funds kept in their joint account, etc. The argument advanced is that out of that joint account, and with the authority vested in him to use the same, L. B. Lindsay can discharge the lien fixed for the entire assessment and also the joint and several personal liability of the two owners

therefor; and that thus the rights of each owner would be fully protected to the same extent as if the amount of the assessment had been divided equally and one-half assessed against each owner's one-half interest in the property with personal liability for that amount fixed for that half only against each owner. That argument is unsound, because it is based on the assumption that L. B. Lindsay will continue such management of the property and will continue to have funds in the joint account to meet those demands; while it may happen that through death or from some other cause he may cease to so represent Mrs. Embrey, and even if that contingency does not arise, the funds in the joint account may cease to be sufficient to meet those demands. The argument is untenable for the further reason that it ignores the mandatory provisions of the statutes, a compliance with which was necessary to give the city council jurisdiction to make the assessments in the first instance. And the assessments being void for lack of compliance with those proceedings, they could not be validated in the manner suggested in the argument, by any court.

It is to be noted further that it was not alleged in the plaintiff's petition, nor was there any evidence to show that L. B. Lindsay and Mrs. Embrey were partners owning and managing said real estate as a partnership business, in the partnership firm name of "Lindsay Estate"; the allegation in plaintiff's petition being that the property was managed, handled, and controlled by L. B. Lindsay with the consent of Mrs. J. T. Embrey under the name of the J. M. Lindsay estate.

The motion for rehearing is overruled.