## REAGAN v. MURRAY.
### No. 4243.

Court of Civil Appeals of Texas. Amarillo.
June 4, 1934.

Rehearing Denied Sept. 10, 1934.

H. D. Payne, of Floydada, for appellant.

Bartlett, Thornton & Montgomery, of Dallas, for appellee.

JACKSON, Justice.

The city of Floydada, a municipal corporation, and the North Texas Trust Company, a private corporation, as plaintiffs, filed this suit, No. 2302, in the district court of Floyd county on October 30, 1930, against the defendants Mrs. Dora Reagan, a widow, and her son J. H. Reagan. The plaintiffs sought judgment against the defendants for the sum of $343.16, evidenced by a special assessment certificate for paving issued by the city of Floydada and to foreclose the paving lien against lot 16 in block 68 of the original townsite of said city.

The sufficiency of the allegations in the petition relative to the passage of the resolutions and ordinances fixing personal liability against the defendants and creating a lien against the property, the completion of the paving according to contract, its acceptance by the city, the issuance of the certificate sued on, its transfer to the North Texas Trust Company, and default in the payment are not questioned.

On January 12, 1933, Mrs. Reagan filed her first amended answer in the district court of Floyd county, pleading general demurrer, general denial, and alleging the invalidity of the certificate sued on because all the resolutions and ordinances attempted to be passed by the city as a basis for the issuance of the certificate, including those declaring the necessity for the improvements and levying the assessments and fixing the liens for the part of the cost charged to the owners for such improvements, were void, since none of said resolutions or ordinances were passed by a vote of two-thirds of the five members of the city council of Floydada.

On April 23, 1932, Owen M. Murray was appointed and thereafter qualified as receiver for the North Texas Trust Company. On April 14, 1933, he, as such receiver, filed suit No. 1523–D in the Ninety-Fifth district court of Dallas county, involving the same subject-matter and asking the same relief against Mrs. Dora Reagan as was sought against the defendants in cause 2302 theretofore filed in the district court of Floyd county.

Mrs. Reagan filed her plea of privilege in the district court of Dallas county to be sued in the county of her residence, which was controverted and on a hearing overruled, from which action she prosecuted an appeal to the Court of Civil Appeals in Dallas. The disposition made of this appeal is not revealed by the record.

On January 27, 1931, on its motion, the city was dismissed from the suit in the district court of Floyd county, and on October 30, 1933, Owen M. Murray, receiver, was substituted as party plaintiff for the North Tex-

as Trust Company in the Floyd county suit, and on the same day Mrs. Reagan filed her plea in abatement urging the pendency of the suit in Dallas county and also her motion for a continuance or postponement until her plea had been determined by the Court of Civil Appeals of Dallas. The plea in abatement and motion for continuance were overruled, and on November 1, 1933, on a trial before the court without the intervention of a jury, judgment was rendered that Owen M. Murray, receiver, take nothing against J. H. Reagan, and that he have and recover of and from Mrs. Dora Reagan the sum of $505.01, with $50 attorneys' fees and the foreclosure of the paving lien against the property, from which judgment Mrs. Reagan appeals.

Appellant challenges as error the action of the trial court in overruling her plea in abatement and motion for continuance, because the record discloses that, after the suit was filed in Floyd county, the prosecution thereof was abandoned by the filing of the suit in the district court of Dallas county, and, in any event, the suit in Floyd county should have been continued until the plea of privilege was disposed of on appeal.

■ The record discloses that the plaintiffs instituted the suit in Floyd county previous to the time of the institution of the suit in Dallas county, and therefore the defendant's plea was to abate the prior suit on account of the filing of a subsequent suit, and was correctly overruled.

"In order to abate a second suit between the same parties on the same cause of action, it is ordinarily essential that the first suit alleged to be pending should have been instituted prior to the time of the filing of the action in which the plea is interposed. Consequently a plea falls when made in the prior rather than the subsequent suit, in the absence of some equitable consideration calling for a different ruling." 1 Tex. Jur. 101 § 71; Pullman Co. v. Hoyle, 52 Tex. Civ. App. 534, 115 S. W. 315, writ denied.

The institution of the suit by the receiver in Dallas county was not an abandonment of the suit in Floyd county, and he was authorized to prosecute the prior, rather than the subsequent, suit. The district court of Floyd county, having acquired jurisdiction, is entitled to retain jurisdiction, and, if a proper plea of abatement is urged to the suit in Dallas county, the court will be without jurisdiction to enter any judgment affecting the merits of the controversy. Conn v. Campbell, 119 Tex. 82, 24 S.W.(2d) 813.

The appellant assails as error the action of the court in rendering judgment against her on the certificate sued on, because the testimony fails to show that the resolutions and ordinances upon which the certificate is based were passed by a vote of four of the five aldermen of the city of Floydada.

The appellee introduced his certificate, the parts of which that are material to this appeal are as follows:

"City of Floydada

"No. 7                                            Dollars
                                                     343.16

"Certificate of Special Assessment for "Improvement of

"Issued to L. H. Lacy Company

"This is to certify, That by virtue of an Ordinance of the City Commission of the City of Floydada, Texas, passed on the 27th day of July, 1928, there was levied and assessed a Special Assessment amounting to the sum of Three-Hundred-Forty-Three    and    16/100 ($343.16) Dollars against property situated in said City, described as follows, to-wit: Being all of lot number 16 in Block Number 68 of the Original Townsite of the City of Floydada, Texas, and against Mrs. Dora Reagan, a widow, the owners—of said property. * * *

"That all the proceedings with reference to making such improvements have been regularly had in compliance with the law and that all prerequisites to the fixing of the Assessment Lien against the property described in this Certificate and all prerequisites to the fixing of the personal liability evidenced by this Certificate, have been duly performed."

The record discloses that the certificate was issued to L. H. Lacy Company, and the paving was completed according to contract and accepted by the city; that the property against which the lien was assessed fronted 50 feet on California street; that the North Texas Trust Company became the owner of the certificate for a valuable consideration, and default had been made in the payment thereof.

Ordinance No. 114 purports to determine the necessity of improving California and Missouri streets and to levy an assessment therefor, fix a date for the hearing for the owners and parties interested in the property to be improved, directs that notice thereof be given, and provides for examining and approving the report of the engineer.

The minutes of the regular meeting of the city council held on July 10, 1928, at which there were present Mayor W. D. Smith, Al-

dermen J. W. Willson, F. L. Moore, B. K. Barker, G. L. Scoggins, L. M. Davis, and Secretary Bedford, disclose the following relative to the enactment of Ordinance No. 114: "Willson moved and seconded by Moore, and carried, passing Ordinance Number 114. An Ordinance of the City of Floydada, Texas, determining the necessity of levying an assessment against the property and the owners thereof abutting upon a portion of California Street and Missouri Street- in the City of Floydada, Texas, for a part of the cost of improving said streets, and fixing a time for a hearing of the owners, or agents of said owners, of said property, or of any·person interested in said improvements, as provided by Chapter 106, Title Street and Alley Improvements, General and Special Laws of Texas passed by the Fortieth Legislature at the First Called Session, May 9th to June 7th, 1927, and the Ordinance of the City of Floydada, and directing the City Secretary to give notice of said hearing, and examining and approving ;the statement of report of the City Engineer and declaring an emergency."

The city council on July 17, 1928, by Ordinance No. 117, closed the hearing provided for in connection with the paving on California street, and all protests were overruled.

Ordinance No. 118 purports to determine the necessity of levying an assessment against the owners and the property abutting on California and Missouri streets, fixes a charge ·and lien against the owners and their property, and provides for the collection thereof.

The minutes of a special meeting of the city council on July 27, 1928, at which the mayor and all aldermen were present, discloses the following relative to the enactment of Ordinance No. 118:

"Meeting convened in obedience to the provisions of Ordinance No. 114, determining the assessment and necessity of paving a portion of California and Missouri Streets. * * *

"Willson moved and seconded by Davis, and carried, passing Ordinance No. 117: An Ordinance closing the hearing heretofore given to property owners in connection with the paving of California Street from the west line of Fifth Street to the west line of First Street and Missouri Street from the west line of Fifth Street to the east line of First Street, of the Original Townsite of Floydada, Texas.

"Davis moved and seconded by Barker, and carried, passing paving assessment Ordinance No. 118: An Ordinance of the City of Floydada, Texas, determining the necessity of levying an assessment against the property

and the owners thereof abutting on a portion of California Street and Missouri Street, Original Townsite of Floydada, in the City of Floydada, Texas, for a part of the cost of improving said Streets, as provided in Chapter 106, Title Street and Alley Improvements, General and Special Laws of Texas, passed by the Fortieth Legislature at the First Called Session, May 9th to June 7th, 1927, and fixing a charge and lien against owners of property and their property abutting said Streets, and to provide for the collection thereof."

Article 1105b, § 6, Vernon's Ann. Civ. St., among other things, provides that: "If any such certificate shall recite substantially that the proceedings with reference to making the improvements therein referred to have been regularly had in compliance with the law and that all prerequisites to the fixing of the assessment lien against the property described in said certificate and the personal liability of the owner or owners thereof have been performed, same shall be prima facie evidence of all the matters recited in said certificate, and no further proof thereof shall be required."

▇ The certificate sued on contained this provision, and its introduction in evidence made a prima facie case.

This article, however, does not repeal "any law general or special * * * but powers, terms and provisions hereof shall exist as alternative powers, terms and provisions to all other laws * * * in any wise relating to the same subject matter."

Article 1082, R. C. S., among other things, contains the following provision: "The city council shall be invested with full power and authority to grade, gravel, repair, pave or otherwise improve any avenue, street or alley, or any portion thereof, within the limits of said city, whenever, by a vote of two-thirds of the aldermen present, they may deem such improvement for the public interest."

The record discloses that the mayor and five aldermen were present when they attempted to pass Ordinance No. 114 and Ordinance No. 118, by each of which the council undertook to determine the necessity of such improvements, and that the same was deemed to be for the public interest. The statute provides that such ordinance or resolution shall be passed by a vote of two-thirds of the aldermen present. Who or how many of the councilmen voted for the passage of these ordinances is not disclosed by the minutes.

In State ex rel. Rea et al. v. Etheridge, 32 S.W.(2d) 828, 830, the Commission of Appeals says:

"In the case of Wood v. City of Galveston, 76 Tex. 132, 13 S. W. 227, 229, where the charter required the proposition attempted to be carried demanded a vote of two-thirds of the aldermen elected, and where the petition did not allege this fact, it was held bad on demurrer, the court saying in that case:

" 'It is a familiar principle that the authority conferred upon municipal corporations to exercise the taxing power is to be strictly construed, and must be closely followed. Burroughs, Tax'n, 372, 471; Frosh v. City of Galveston, 73 Tex. 409, 11 S. W. 402.'

"The court also makes this statement in that connection: 'We think the requirement of the charter as stated in the petition, that the improvements should not be made unless two-thirds of the aldermen elected should vote therefor, a very important requirement, and a condition precedent to fixing one-third of the cost of such improvement as a charge against the abutting property; and we also think that it should be affirmatively shown that the aldermen had so voted.' * * *

"However, if no text-writer, and no appellate court had ever discussed the proposition, in view of the public policy of this state on the subject, we would feel bound to give to the language in article 961 'council of such city,' under the facts of this case, which are not contradicted, the construction which we have indicated, and to hold as an original proposition that this language must be strictly construed, and the means prescribed by law must be closely followed, to exercise the taxing power by virtue of title 28. The statute says that the town council shall be composed of five aldermen, and, strictly construing this language, there is no escape from the conclusion that the word 'council,' as thus used in that connection, means the five aldermen having the power to vote on propositions, and it was necessary in this instance, in order to enact a valid ordinance on this proposition, that two-thirds of the five aldermen should have been shown by the record affirmatively to have voted in favor thereof."

█ Many authorities from numerous other jurisdictions could be cited, but in our opinion this is conclusive that it is incumbent upon appellee to show affirmatively that the Ordinances Nos. 114 and 118 were passed by a two-thirds vote of the aldermen present.

█ Appellee contends, however, that under the provisions of article 1105b, § 9, providing in effect that, if the owner of property shall not prosecute an appeal from the decision of the governing body of the city within fifteen days, he shall be barred and estopped from in any manner contesting the assessment, amount, accuracy, validity, regularity, or sufficiency thereof. This statute does not apply to an assessment void on jurisdictional grounds.

In Elmendorf v. City of San Antonio, 242 S. W. 185, 186, the Commission of Appeals says:

"It will be observed that the statute, article 1008, made section 3 of the Street Improvement Law, says that 'the governing body of any city shall have power to order the improvement of any highway therein, or part thereof,' and that the procedure ordinance, section 5, provides that, 'whenever the city council shall determine to improve any highway as defined in said act, it shall pass a resolution to that effect and such resolution shall invite bids on the proposed improvement and in general terms set forth the nature and extent of the improvements to be made,' etc. This resolution is the foundation upon which all the proceedings for the accomplishment of a proposed improvement is made to rest. Without it nothing legal can be done; no bids can be invited, no plans, profiles, and specifications can be prepared, no advertisement for bids can be made, and consequently no filing, opening, reading or acceptance of bids can be had, and no valid contract for the improvement of a street or highway which has not thus been ordered or determined to be improved can be entered into by the city. Without a resolution or ordinance ordering the improvement of a street, none of the steps provided by the ordinance to be taken preparatory to the contract can be taken. The resolution is primary, fundamental, and jurisdictional. Without it the city acquires no jurisdiction over either the abutting property or over the owners thereof, and therefore cannot make a valid assessment against either, and can create no lien on the property and impose no personal obligation upon the owner or owners."

After quoting the old statute providing in substance that the owner shall be barred from any defense of invalidity in the proceedings or assessment for the improvement unless he has prosecuted an appeal from the action of the board within twenty days, it continues:

"We think this statute should be held to apply only to such defects and irregularities in the proceedings as would render the assessment or reassessment voidable, and not void. It cannot be interposed to aid an assessment which is void on jurisdictional grounds, as shown on the face of the proceedings. The

assessment, in this case, and all 'the proceedings with reference thereto,' in so far as they concern the right of the city to impose any cost of improvements on plaintiffs in error, are mere nullities having no more life, force, or power than if they had never been attempted. Being such, plaintiffs in error could entirely ignore them as ineffectual to create any charge upon their property. Not until suit was brought upon the certificate, which would culminate, by default on their part, in a judgment against them and their property, did they have any cause for complaint. This provision as to limitation of the time after which the owner 'shall be barred from an action or defense' confers no rights upon the city."

Appellant attacks the constitutionality of article 1105b on various grounds, but we deem it unnecessary to pass upon the questions presented, because, should said article be declared unconstitutional, appellee's certificate would be valid under the old law, provided the city council complied with the provisions thereof in passing the resolutions and ordinances declaring the necessity for the improvement and levying the assessment therefor.

The judgment is reversed, and the cause remanded.

MARTIN, J., not sitting.