The CITY OF GARLAND, Texas, Appellant,

v.

GARLAND INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 17603.

Court of Civil Appeals of Texas, Dallas.

May 14, 1971.

Rehearing Denied June 11, 1971.

Robert E. Young, Garland, for appellant.

Earl Luna, Dallas, for appellee.

GUITTARD, Justice.

This declaratory judgment action presents the question whether an independent school district may be subjected without its consent to liability for special assessments levied by a city for paving streets abutting school property. The trial court held that the district is not liable for such assessments, and we affirm.

We must look to our constitution and statutes for expressions of the policy of the state as to which of the two political subdivisions should bear the cost of these public improvements.

The city contends that even though school property is "exempt from forced sale, and from taxation" under Tex.Const., Art. XI, § 9, Vernon's Ann.St., a special assessment for street improvements, which confers a benefit on abutting property, is not "taxation" within this exemption, and hence liability for the assessment is imposed on the district, as on any other abutting owner, by Vernon's Ann.Tex.Rev.Civ. Stat., Art. 1105b (1963), which authorizes cities to levy such assessments. The city relies particularly on the following language from Sec. 8 of Art. 1105b:

"Nothing herein shall empower any city, or its governing body, to fix a lien against any interest in property exempt, at the time the improvements are ordered, from the lien of special assessment for street improvements, *but the owner or owners of such property shall nevertheless be personally liable for any assessment in connection with such property.*" (Emphasis added.)

The district contends that it is not liable for the assessment in the absence of approval by its board of trustees because its expenditures are limited to purposes authorized by its board under Tex.Ed.Code, § 20.48, V.T.C.A.:

"(a) *The public free school funds shall not be expended except as provided in this section.*

"(b) The state and county available funds shall be used exclusively for the payment of teachers' and superintendents' salaries, fees for taking the scholastic census, and interest on money borrowed on short time to pay salaries of teachers and superintendents, when these salaries become due before the school funds for the current year became available; provided that no loans for the purpose of payment of teachers shall be paid out of funds other than those for the then current year.

"(c) Local school funds from district taxes, tuition fees of pupils not entitled to free tuition and other local sources may be used for the purposes enumerated for state and county funds and for purchasing appliances and supplies, for the payment of insurance premiums, janitors and other employees, for buying school sites, buying, building and repairing and renting school houses, *and for other purposes necessary in the conduct of the public schools to be determined by the board of trustees, * * *.*" (Emphasis added.)

The district concedes that its board of trustees has power to expend school funds for improving abutting streets, but insists that the statute forbids such expenditure without the board's approval. We agree. § 20.48 expressly forbids any expenditure of school funds except for enumerated purposes "and for other purposes necessary in the conduct of the public schools to be determined by the board of trustees." Since street improvement is not

one of the enumerated purposes, it follows that school funds cannot be expended for that purpose unless the trustees first determine that such an expenditure is "necessary in the conduct of the public schools." This prohibitory language is a more specific declaration of legislative intent with respect to expenditure of school funds than Article 1105b, which merely provides personal liability on the part of owners of exempt property in general. It is reasonable to suppose that more specific language would have been used in Article 1105b if there had been an intention to authorize cities to appropriate tax funds of other public bodies without their consent. We conclude that the legislature has delegated to the school board rather than to the city council authority to determine whether school funds should be expended for street improvements.

Support for this conclusion is found in Harris County v. Boyd, 70 Tex. 237, 7 S. W. 713 (1888), in which the Supreme Court held that authority to assess a county for improving a street abutting the courthouse was not necessarily intended by a charter provision authorizing the city to levy such assessments. On this point the court said:

"Again, the mode of assessment is faulty. In effect, it seeks to impose upon the county a burden for a local benefit, and without its sanction. By the constitution, 'county commissioners' are recognized as the local government, with powers of county legislation within its limits; the county itself, a legal subdivision of the state. Much of the powers and duties of the government is committed to those local bodies, affecting important interests for the welfare of the inhabitants. * * * It is not a necessary conclusion that the charter of the city, under which the questioned authority was exercised, was intended by the legislature to invade or interfere with the functions of government committed to the county commissioners, or to impose burdens upon the county independent of or against the orders of the commissioners."

The court went on to hold that the city was exempt from the assessment under Tex.Const., Art. XI, § 9, which provides:

"The property of counties, cities and towns, owned and held only for public purposes, such as public buildings and the sites therefor, fire engines and the furniture thereof, and all property used, or intended for extinguishing fires, public grounds and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale, and from taxation, provided, nothing herein shall prevent the enforcement of the vendors lien, the mechanics or builders lien, or other liens now existing."

Concerning this exemption, the court said:

"But, finally, there is no apparent reason why the exemptions in the constitution should not be taken in the ordinary and more comprehensive sense, so as to include all taxation, special as well as general. The purposes of the exemption obtain equally against special assessments as against general taxation. The inhibition against sale would seem to negative the power to assess. If the property cannot be subjected by sale to the tax, a mere assessment, in many cases, would be useless. Besides in any decree foreclosing a lien, execution ordinarily runs against the defendant for the residue after exhausting the subject of the lien. To allow judgment to run against the county first would be to allow the city authorities to add to the county liabilities, and increase the taxation necessary to be levied by the county commissioners. They are intrusted with the discretion of determining, at least so far as contracts extend, what outlay shall be made of the general revenues of the county. They should not be interfered with by the city authorities."

As we read this opinion, it is based on three grounds: (1) the statutory charter provision authorizing the assessment was not intended to impose additional financial burdens on the county against the orders of the commissioners; (2) the exemption of public property from "taxation" in Article XI, § 9 applies to special assessments as well as general taxation and (3) the exemption of property from forced sale implies an exemption of the owner from the assessment. All of these grounds apply to a school district to the same extent as to a county.

The city questions the authority of Harris County v. Boyd because the second and third holdings above enumerated have not been followed in later cases. There is no suggestion that the first holding, which supports the primary ground of our decision, has been questioned. The city is correct in saying that the third holding has not been followed, since there are later decisions to the effect that an owner may be liable for an assessment, though his property is exempt from forced sale. Thus in Spears v. City of San Antonio, 110 Tex. 618, 223 S.W. 166 (1920), the owner of a homestead exempt from forced sale was held personally liable for an assessment, and in Mount Olivet Cemetery Co. v. City of Fort Worth, 275 S.W.2d 152 (Tex.Civ. App., Fort Worth 1955, writ ref'd n.r.e.), the owner of a cemetery was held liable for the assessment, though its property dedicated for cemetery purposes was not subject to sale. These cases, however, may be distinguished on the ground that they did not involve assessments against political subdivisions supported by tax funds.

With respect to the second of the holdings in Harris County v. Boyd above enumerated, it may be conceded that the Supreme Court has held that special assessments are not "taxes" within constitutional provisions other than Article XI, § 9. In Higgins v. Bordages, 88 Tex. 458, 31 S.W. 52, 803, 53 Am.St.Rep. 770 (1895), an assessment for a sidewalk was held not to be

a "tax" for which a homestead could be sold under Article XVI, § 50. This holding was reaffirmed in City of Wichita Falls, etc. v. Williams, 119 Tex. 163, 26 S. W.2d 910, 79 A.L.R. 704 (1930). However, neither of these decisions overrules the holding in Harris County v. Boyd concerning Article XI, § 9. The *Bordages* opinion cites *Boyd* with approval, and in the *Williams* opinion Chief Justice Cureton distinguishes *Boyd* with the following comment:

"It is true that the Commission of Appeals in the case of County of Harris v. Boyd, 70 Tex. 237, 7 S.W. 713, stated there was no apparent reason why the exemptions from 'taxation' in the Constitution should not be taken to include special assessments. However, *the constitutional provision before the court in that case was section 9 of article 8 [11?], which contains other words coupled with the word 'taxation,' which warranted the interpretation given. Besides, the decision in the Boyd case was obviously correct on other grounds, some of which were stated in the opinion,* and some of which are found in the general rules of law applicable to the taxation of public property." (Emphasis added.)

The only decision cited which appears to permit an assessment against a political subdivision notwithstanding Article XI, § 9 is Wichita County Water Improvement Dist. No. 2 v. City of Wichita Falls, 323 S.W.2d 298 (Tex.Civ.App., Fort Worth 1959, writ ref'd n.r.e.), in which a city was held liable for an irrigation charge assessed against its land. Without citing Harris County v. Boyd, the Fort Worth Court of Civil Appeals held that the city was liable for the assessment. Since there was evidence that the city had used irrigation services afforded by the district on the land in question, the decision can be justified on the ground that a public body which elects to use services of another public agency, impliedly consents to pay reasonable charges for such services. In

this connection it may be noted that in Bexar County v. City of San Antonio, 352 S.W.2d 905 (Tex.Civ.App., San Antonio 1961, writ dism'd), the San Antonio Court of Civil Appeals, in holding that the county was liable to the city for a sewer charge as a "reasonable charge for the service rendered," was careful to point out that if the charge were considered either a tax or an assessment against the property it would be illegal and void, citing Harris County v. Boyd and Article XI, § 9.

In the light of these authorities, the holding in Harris County v. Boyd that Article XI, § 9 exempts a political subdivision as well as its property from assessments for street improvements stands as authoritative.

The city contends that even if the ordinances levying the assessments in question were not valid at the time of their enactment, any invalidity has been cured by subsequent validating legislation, particularly Tex.Rev.Civ.St.Ann., Articles 1174a-8 (1965), 1105b-1 (1967), 1105b-2 (1969), and 974d-13 (1969). These statutes are subject to the same reasons which have persuaded us that no liability exists for assessments under Article 1105b. They cannot overturn the constitutional exemption in Article XI, § 9 as interpreted in Harris County v. Boyd. Neither do they show any more specific legislative intent than does Article 1105b to appropriate tax funds of public bodies without their consent. None of them deals with assessments against property of school districts or other political subdivisions, and none indicates any intention to modify the provisions of Tex.Ed.Code, § 20.48 concerning expenditure of school funds. Consequently, they form no stronger basis than does Article 1105b for sustaining the assessments in question.

The city cites Port Arthur Independent School District v. City of Groves, 376 S. W.2d 330 (Tex.Sup.1964), for its holding that buildings erected by school districts are subject to reasonable requirements of city building ordinances. In that case the Supreme Court held that the state had delegated to the city the responsibility of protecting the health and safety of its citizens, and that the city's exercise of that responsibility by requiring school buildings to meet minimum standards of construction did not usurp the responsibility delegated to the school district in the realm of education. Otherwise, said the court, there would be a hiatus in the regulation necessary to the health and safety of the community, since there was no provision for any system of regulation or inspection of school buildings. In our opinion, this reasoning does not apply to assessments for street improvements. The city has the power to make the improvements without any action by the district, and the only question is whether school funds shall be appropriated to pay for them. For the reasons stated above, we hold that the legislature has delegated to the board of trustees of the district authority to determine whether school funds should be used for that purpose.

■ The city also contends that the district has waived any objection to the assessment as a result of its failure to file suit to avoid it within fifteen days from the time it was levied, as provided by Section 9 of Article 1105b. The district says that this did not amount to a waiver because the assessment against it was void, not simply voidable for irregularity, citing Elmendorf v. City of San Antonio, 242 S. W. 185 (Tex.Comm'n App.1922). In that case the assessment was void because the city council had never passed any resolution to improve the streets in question. The Commission of Appeals held that the property owner was not barred by failure to file suit within the time required by the statute, saying:

"We think this statute should be held to apply only to such defects and irregularities in the proceedings as would render the assessment or reassessment voidable, and not void. It cannot be interposed to aid an assessment which is void

on jurisdictional grounds, as shown on the face of the proceedings."

Likewise, in Johnson v. Lindsay, 30 S. W.2d 655 (Tex.Civ.App., Fort Worth 1930, writ dism'd), property owners who had not filed suit attacking an assessment within the time required by the statute were held entitled to defend a suit for the amount of the assessment on the ground that the assessment was made against the estate of a decedent which was closed at the time of the assessment rather than against the devisees individually, and on the further ground that it was made against co-owners jointly instead of being limited to the interest of each owner.

We hold that the absence of the approval of the school board for this expenditure of funds was not a mere irregularity which rendered the assessment voidable, but was rather a matter affecting the city's power to make the assessment, which was void without such approval. Consequently the district's failure to file suit within the time required by Section 9 of Article 1105b does not bar it from asserting that the assessment was void with respect to the district or its property.

Affirmed.