

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

March 30, 1989

Mr. Perry L. Adkisson
Chancellor
Texas A & M University System
219 Systems Administration Bldg.
College Station, Texas    77843

Opinion No. JM-1035

Re: Assessment of Capital Recovery Fees by the city of Houston against Texas A & M University for waste water services (RQ-1533)

Dear Mr. Adkisson:

You inform us that the city of Houston is seeking to collect a capital recovery fee for the use of the city's waste water system, and ask the following question:

> Can the City of Houston legally assess the capital recovery fees set out herein against a state agency for utilizing its waste water system?

Texas A & M University is building an Institute of Biosciences and Technology in the Texas Medical Center in Houston. In conjunction with the actual cost of connecting with and using the city's waste water system, the city is attempting to assess a capital recovery fee in accordance with a city ordinance. The ordinance provides that amounts collected as capital recovery charges shall be used solely to pay or reimburse all or part of "the capital cost of constructing specific facilities comprising or to comprise a portion of the system and designed to increase the waste-water capacity of the system," excluding repairs and replacements of existing facilities, and extensions or enlargements to certain sewer mains or laterals. Houston, Tex., Code of Ordinances § 47-323 (1968).

You do not express any objection to paying other charges of providing sewer service, such as connection fees or monthly service charges. A city may make a reasonable charge to a public entity for the provision of sewer service. Bexar County v. City of San Antonio, 352 S.W.2d 905 (Tex. Civ. App. - San Antonio 1961, writ dism'd). See generally Attorney General Opinions H-1289, H-1265 (1978)

(charges includible in rates charged the state for electric utility service and telephone service).

You argue that the "capital recovery fee" is actually a special assessment and therefore cannot be imposed on a public entity in the absence of express legislative author- ity. Maverick County Water Control Improvement Dist., No. 1 v. State, 456 S.W.2d 204, 207 (Tex. Civ. App. - San Antonio 1970, writ ref'd); Attorney General Opinions JM-523 (1986); MW-551 (1982). A brief submitted in connection with your request agrees that capital recovery fees are special assessments and argues that article XI, section 9, of the Texas Constitution exempts public property from them.

The Texas Supreme Court has defined special assessments as follows:

> Special assessments . . . are those special and local impositions upon the property in the immediate vicinity of municipal improve- ments which are necessary to pay for the improvements, and are laid with reference to the special benefit which the property is supposed to have derived therefrom.

City of Wichita Falls v. Williams, 26 S.W.2d 910, 911 (Tex. 1930). See also Conlen Grain and Mercantile, Inc. v. Texas Grain Sorghum Producers Board, 519 S.W.2d 620, 623 (Tex. 1975) (distinguishing assessment on grain processors from special assessments on land).

Other briefs argue that these fees are not special assessments, but usage fees charged as a cost of providing the service, so that the arguments relevant to the imposition of special assessments do not apply to capital recovery fees. See generally Bexar County v. City of San Antonio, supra (sewer charges were not assessments, even though rates include costs of making replacements and extending and improving system). The capital recovery fees are assessed against users of a sewage disposal and treat- ment system to pay for improvements necessary to provide sewer disposal services. The traditional special assess- ment, a charge against landowners for the costs of building a street bordering on their property, is not connected with the delivery of municipal services. Thus, the capital recovery fee may not fit easily into the category of special assessment. See generally San Marcos Water Dist. v. San Marcos Unified School Dist., 217 Cal. Rptr. 260 (Cal. App. 1985) (sewer fee used to defray costs of capital improvements was not a special assessment but a usage fee),

overruled, 720 P.2d 935  (Cal. 1986) (such  sewer fee was  a special assessment).

However, there  are Texas  cases dealing  with  special assessments for irrigation improvements which are  necessary to  the  provision  of  irrigation  services  to  the  land-owner.  See, e.g., Maverick County Water Control Improvement Dist., No. 1 v. State, supra; State v. Bexar-Medina-Atascosa Counties Water Improvement Dist. No. 1, 310 S.W.2d 641 (Tex. Civ. App. - San Antonio 1958, writ ref'd). See also Attorney General Opinions  JM-523 (1986)  (capital recovery  fee  for water services  treated  as a  special  assessment); MW-551 (1982) (drainage fee treated  as a special assessment).  We will not attempt to  determine whether the capital  recovery fee is more properly  characterized as a  "user fee" than  a "special assessment" but  will assume for  purposes of  this opinion that the capital  recovery fees are special  assess-ments. Since  we  conclude that  the  city of  Houston  may collect the capital recovery fee in this case, the answer to your question does not depend on the name we use to identify the fee.

The authorities  have  generally  stated  that  special assessments are levied as an exercise of the power of  taxa-tion. City of  Wichita Falls  v. Williams, supra, at  911; see also 14  McQuillin, Municipal  Corporations § 38.01  (3d ed. 1987) (special assessments are  sometimes held to be  an exercise of the police power).  However, they are not  taxes as that word is generally understood. City of Wichita Falls v. Williams, supra.  Taxes are charges imposed by the legis-lative power of the state  to raise revenue for the  general purposes of government  and are not  related to any  special benefit to the taxpayer from  the expenditure of the  funds. Conlen Grain  and Mercantile, Inc. v. Texas Grain  Sorghum Producers Board, supra, at 623; see also Wichita  County Water Improvement Dist. No. 2 v. City of Wichita Falls, 323 S.W.2d 298 (Tex.  Civ. App.  - Fort Worth  1959, writ  ref'd n.r.e.).

Since special assessments are levied as an exercise  of the taxing  power, questions  arise  as to  the  application of constitutional  and  statutory  provisions  on  taxation. Some states  have concluded  that constitutional  provisions exempting publicly owned and used property from taxes do not apply to special  assessments, but such  assessments may  be imposed on public  property only  under express  legislative authorization.  The California Supreme  Court has stated  as follows:

> While publicly owned and used property is not exempt from special assessments under the constitution or statutory law of this state, there is an implied exemption of such property from burdens of that nature. . . . The principle which makes property of the state . . . nontaxable . . . also precludes the imposition of a special assessment for a street or other local improvement upon such property, unless there is a positive legislative authority therefor. . . .
>
> The rationale behind a public entity's exemption from property taxes and special assessments is to prevent one tax-supported entity from siphoning tax money from another such entity; the end result of such a process could be unnecessary administrative costs and no actual gain in tax revenues. . . . On the other hand, when one tax-supported entity provides goods or services to another, neither the California Constitution nor decisional law exempts the public entity from paying for these goods or services.

San Marcos Water Dist., v. San Marcos Unified School Dist., 720 P.2d 935 (Cal. 1986) (citations omitted); City of Inglewood v. Los Angeles County, 280 P. 360, 363 (Cal. 1929).

The Texas courts also recognize the principle that ordinarily the legislature does not intend to tax property of the state. The Texas Supreme Court has said that this would involve the state in "the senseless process of taxing itself," the net result of which would be to take money out of one pocket to put it into another, less assessment and collection costs. Lower Colorado River Authority v. Chemical Bank & Trust Co., 190 S.W.2d 48, 51 (Tex. 1945). The principle applies to political subdivisions supported by taxation, as well as to the state. City of Marlin v. State, 205 S.W.2d 809 (Tex. Civ. App. - Waco 1947, no writ). In the absence of a constitutional prohibition, however, the legislature may subject the state and political subdivisions to taxation. See Attorney General Opinion WW-1502 (1962) (state purchases of motor fuel subject to excise tax); see also Attorney General Opinions JM-987 (limited sales and use tax law applies to state, its agencies, and political subdivisions); JM-972 (1988) (state employees traveling at state expense on state business are not exempt from hotel occupancy tax).

The Texas Supreme Court has held that special assessments are not "taxes" within article VIII of the Texas Constitution, within sections 4 and 5 of article XI, and within section 50 of article XVI, pertaining to the protection of homesteads from forced sale for debt. City of Wichita Falls v. Williams, supra, and authorities cited therein; Harris County v. Boyd, 7 S.W. 713 (Tex. 1888) and authorities cited therein.

The supreme court has also stated, however, that article XI, section 9, of the Texas Constitution prohibited a city from imposing a special assessment on a county for improving the street bordering the courthouse site. Harris County v. Boyd, supra. This provision states as follows:

> The property of counties, cities and towns, owned and held only for public purposes, such as public buildings and the sites therefor . . . public grounds and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale and from taxation . . . .

Tex. Const. art. XI, § 9. Article XI, section 9 also applies to state-owned property. Lower Colorado River Authority v. Chemical Bank & Trust Co., supra.

The supreme court's conclusion in Harris County v. Boyd, supra, that the city could not impose a paving assessment on the county, was based partly on the absence of statutory authority for this charge. The legislature did not intend the city's charter provision authorizing assessments to interfere with governmental functions committed to the county commissioners, or to impose additional financial burdens upon the county against the orders of the commissioners. 7 S.W. at 715. The court went on to find the county exempt from the assessment under article XI, section 9, of the constitution, stating as follows:

> [T]here is no apparent reason why the exemptions in the constitution should not be taken in the ordinary and more comprehensive sense, so as to include all taxation, special as well as general.

Id. The court also noted that this question had been decided differently by other courts, and "there is great conflict in the decisions." Id. Subsequent Texas cases

have cast doubt on the constitutionally-based holding of Boyd.

In City of Wichita Falls v. Williams, the supreme court construed article XVI, section 50, of the Texas Constitution, which exempts homesteads from forced sale for debts, except for taxes and certain other debts, and determined that special assessments were not "taxes" within that provision. The court distinguished the Boyd case as follows:

> It is true that the Commission of Appeals in the case of County of Harris v. Boyd, 70 Tex. 237, 7 S.W. 713, stated there was no apparent reason why the exceptions from 'taxation' in the Constitution should not be taken to include special assessments. However, the constitutional provision before the court in that case was section 9 of article 8 [sic], which contains other words coupled with the word 'taxation,' which warranted the interpretation given. Besides, the decision in the Boyd Case was obviously correct on other grounds, some of which were stated in the opinion, and some of which are found in the general rules of law applicable to the taxation of public property. McQuillin on Municipal Corporations (2d Ed.) vol. 5, § 2212.  (Emphasis added.)

Id. at 914; see 14 McQuillin, Municipal Corporations § 38.73 (3d ed. 1987).

The court in Wichita County Water Improvement Dist. No. 2 v. City of Wichita Falls, supra, held that a city was liable to a water improvement district for "benefit assessments" levied against city-owned land within the district's boundaries. The water district's taxes were levied by the benefit assessment plan rather than upon an ad valorem basis. See generally Water Code § 51.512. The court reviewed case law and treatises stating that tax exemptions apply only to ordinary taxes for the general purposes of government and not to special assessments for local improvements. See, e.g., State v. City of El Paso, 143 S.W.2d 366 (Tex. 1940) (cities are exempt from only three classes of taxes: ad valorem, occupation, and income taxes); City of Cisco v. Varner, 16 S.W.2d 265 (Tex. Comm'n App. 1929, judgm't adopted) (special assessment is not tax within constitution, thus defense of limitation was available). It concluded that article XI, section 9, of the Texas

Constitution did not exempt the city from payment of the assessments.

Attorney General Opinion No. WW-786 (1960), issued shortly after Wichita County Water Improvement Dist. No. 2 v. City of Wichita Falls was decided, relied on that case to hold that a hospital district was liable to a city for paving assessments. After pointing out that the application for writ of error was refused with the notation "no reversible error," the opinion stated as follows:

> Though this docket notation may have cast certain doubt (the extent of which has never been satisfactorily defined) upon the reasoning of the Fort Worth Court, the Supreme Court's refusal to entertain the writ of error laid to rest any question as to the continued vitality of the early case of Harris County v. Boyd, 7 S.W. 713 (Tex. Sup. Ct. 1888), which reached a directly contrary result.

Attorney General Opinion WW-786 (1960).

However, Boyd was relied upon in City of Garland v. Garland Indep. School Dist., 468 S.W.2d 110 (Tex. Civ. App. - Dallas 1971, writ ref'd n.r.e.), in which the court held that a city could not compel a school district to pay special assessments for paving streets next to school property. The court first determined that section 20.48 of the Education Code did not permit the expenditure of school funds for street improvement unless the trustees of the district first determined that the expenditure was "necessary in the conduct of the public schools." Id. at 112. This was the "primary ground" of the court's decision in City of Garland, and it was supported by the holding in Boyd that the city charter provision authorizing the assessment was not intended to impose additional financial burdens on the county.

The Garland court also concluded that article XI, section 9, exempted a political subdivision from assessments for street improvements and that Harris County v. Boyd stood as authoritative on this issue. Id. at 114. In reaching this alternative ground for its decision, the Garland court sought to distinguish Wichita County Water Improvement Dist. No. 2 v. City of Wichita Falls, by stating that the city had used the district's irrigation services on the land, and thus impliedly consented to pay reasonable charges for those services. This distinction, however, appears to confuse

benefit assessments with charges for providing water to irrigate the land. The city of Wichita Falls was subject to an assessment for each acre of irrigable land and had used irrigation services on "small areas" of its tract. _Wichita County Water Improvement Dist. No. 2 v. City of Wichita Falls_, _supra_. Water improvement districts impose benefit assessments to finance the construction of improvements necessary to irrigate the land. _See_ Water Code §§ 51.125, 51.502, 51.512, 51.516, 51.518. In addition, the landowner must pay a separate water charge or assessment for receiving water to irrigate his land. Water Code §§ 51.301-51.321, 51.508, 51.509. The supreme court designated the _City of Garland_ case "writ refused, no reversible error."

The most recent Texas decision on the payment of special assessments by governmental bodies is _Maverick County Water Control & Improvement Dist. No. 1 v. State_, _supra_. The court noted that the Texas Supreme Court had held in _Boyd_ that article XI, section 9, of the Texas Constitution applied to special assessments, but that subsequent decisions had reached a contrary result. 456 S.W.2d at 206-07, n. 5. The _Maverick_ case determined that land owned by the Veterans' Land Board was exempted by statute from ad valorem taxation and was not subject to special assessments because no statute imposed them on the state. _Id._ at 206. The court stated as follows:

> Although the power of a governmental agency to levy special assessments for local improvements is generally recognized to be an exercise of the taxing power, there are numerous decisions holding that a special assessment is not a 'tax' in the sense in which that word is ordinarily used. We do not think it necessary to consider the question whether such an assessment is a tax within the meaning of constitutional provisions exempting property from taxation in a case where, as here, a political subdivision created by the sovereign is attempting to impose a monetary exaction upon its creator.

> Even if it be assumed that a county or municipality is subject to special assessments levied by another political subdivision of the State, it does not necessarily follow that a subordinate political subdivision can impose an involuntary monetary obligation on the sovereign. It is generally held that, in the absence of clear legislative authorization, a

> political subdivision of the State has no
> power to levy a special assessment against
> State property. We adopt this view at least
> in a case where, as here, the sovereign is
> neither making nor contemplating any use of
> the allegedly benefitted land and has neither
> received nor requested the services rendered
> by the assessing agency.  (Footnotes omitted.)

Id. at 206-07.

The Maverick case did not need to determine whether a special assessment is a tax within article XI, section 9, of the constitution. See also Attorney General Opinions JM-523 (1986); MW-551 (1982) (did not reach question because no statutory authority for assessment). Nonetheless, its references to this issue suggest that we cannot confidently rely on the holding in Boyd that article XI, section 9, of the Texas Constitution, exempts publicly-owned property used for public purposes from special assessments. The Maverick decision actually rests on the absence of legislative authorization for imposing the special assessment on the state. The decisions in both Boyd and in City of Garland are also supported by this non-constitutional ground -- the absence of express statutory authority for imposing the special assessments on a political subdivision -- as well as their interpretation of article XI, section 9.

The City of Garland case, which said that the constitutional holding in Harris County v. Boyd was authoritative, was designated "writ refused, no reversible error" by the supreme court. The Maverick case questioned the same holding in Boyd, and was designated "writ refused." Although the supreme court has not explicitly reconsidered Boyd, your question requires us to form an opinion on how the supreme court might rule on it in the future. In the more than one hundred years since Harris County v. Boyd was issued, Texas courts, except for the City of Garland court, have disregarded its constitutional holding or emphasized the alternative basis for the decision. These courts have had the benefit of legal scholarship and judicial decisions on special assessments which did not exist when Boyd was decided. We believe the supreme court, if it were to consider this question again, would rule that the article XI, section 9 tax exemption does not encompass special assessments. Accordingly, article XI, section 9, of the Texas Constitution does not bar the city of Houston from imposing capital recovery fees on a state agency for using its waste water system.

We also conclude that the legislature has authorized the city to impose such fees on state agencies that use its waste water system.  Statutory authority for charging the fees is found in chapter 26 of the Water Code, which was enacted as part of the Texas Water Quality Act of 1967 and codified in the Texas Water Code.  See Acts 1967, 60th Leg., ch. 313, at 745 (adopting Texas Water Quality Act of 1967); Acts 1971, 62d Leg., ch. 933, at 2850 (amending Texas Water Quality Act to include predecessor of section 26.176(b)); Acts 1971, 62d Leg., ch. 612, at 1978, 1985 (repealing chapter 933 of Acts 1971 and incorporating predecessor of section 26.176(b) into Texas Water Code).

Local governments are granted certain authority under chapter 26 to provide for water quality within their area. Water Code §§ 26.171-26.177.  Section 26.176 authorizes every local government which owns or operates a sewage disposal system to adopt rules to control the discharge of waste into the system.  In the event of any conflict between its provisions and any other laws, the provisions of section 26.176 shall control.  Water Code § 26.176(e).  Section 26.176(b) provides as follows:

> (b)  The local government in its rules may establish the charges and assessments which may be made to and collected from all persons who discharge waste to the disposal system or who have conduits or other facilities for discharging waste connected to the disposal system, referred to in this subsection as 'users.'  The charges and assessments shall be equitable as between all users and shall correspond as near as can be practically determined to the cost of making the waste disposal services available to all users and of treating the waste of each user or class of users.  The charges and assessments may include user charges, connection fees, or any other methods of obtaining revenue from the disposal system available to the local government.  In establishing the charges and assessments, the local government shall take into account:
>
> (1)  the volume, type character, and quality of the waste of each user or class of users;
>
> (2)  the techniques of treatment required;

(3)  <u>any capital costs and debt retirement expenses of the disposal system required to be paid for from the charges and assessments</u>;

(4)  the costs of operating and maintaining the system to comply with this chapter and the permits, rules, and orders of the commission; and

(5)  <u>any other costs directly attributable to providing the waste disposal service under standard, accepted cost-accounting practices</u>. (Emphasis added.)

Water Code § 26.176(b).

This statute expressly authorizes the local government to take into account capital cost of the disposal system in establishing charges and assessments, such as the capital recovery costs in question. Moreover, these charges and assessments are to be collected from "all persons" using the disposal system. In the context of section 26.176(b), "all persons" includes state agencies.

The language of section 26.176(b) was adopted in 1971, as an amendment to the Texas Water Quality Act of 1967. Acts 1971, 62d Leg., ch. 933, at 2850. The Water Quality Act defined "person" to mean "individual, corporation, organization, government or governmental subdivision or agency, business trust . . . or any other legal entity" unless the context required a different result. Acts 1969, 61st Leg., ch. 760, at 2229 (amending Water Quality Act of 1967). The legislature intended "person" in section 26.176(b) and its predecessors to include governmental agencies in order to enable local governments to qualify for federal grant funds under the federal Water Pollution Control Act. The provisions of the Water Quality Act demonstrate the legislature's intent to enable state and local governments to receive grants under federal water pollution control legislation. <u>See</u> Water Code § 26.035 (Water Commission may receive federal assistance, grants, or loans for water quality control activities including waste disposal facilities); § 26.175 (local government may contract with commission for transfer of money for water quality control functions and for construction, purchase, maintenance, and operation of sewage disposal systems). <u>See also</u> Attorney General Opinions M-1069 (1972); M-894, M-822 (1971); M-32 (1967) (discussing state authority under Texas Water Quality Act to contract for federal grants for

local governments under federal Water Pollution Control Act).

The Environmental Protection Agency has authority to make grants to states and municipalities to build publicly owned treatment works. 33 U.S.C. § 1281(g)(1). However, an applicant may not receive a grant unless he has adopted or will adopt a system of charges designed to assure that each recipient of waste treatment services will pay its proportionate share "of the costs of operation and maintenance (including replacement) of any waste treatment services provided by the applicant . . . ." 33 U.S.C. § 1284(b)(1). Federal regulations adopted under this provision further describe the user charges which must be collected from recipients of waste treatment services and demonstrate that governmental agencies must pay such charges. See 40 C.F.R. § 35.905 (definitions of "industrial user" and "user charge"); § 35.929-1(b)(4)(iii).

Section 26.176(b) of the Water Code authorizes a local government to establish the "user charges," which it must adopt to qualify for a federal grant for sewage treatment works. The purpose underlying this section shows that it must be read to apply to governmental as well as private entities.

When the Texas Water Quality Act was codified in the Water Code, the definition of "person" was deleted from its list of definitions. However, the language of section 26.176(b) was incorporated into the Water Code by an enactment which included a provision making it expressly subject to all provisions of the Code Construction Act. Acts 1971, 62d Leg., ch. 612, § 2, at 1985. See also Water Code § 1.002 (application of Code Construction Act to code). The Code Construction Act defines "person" as follows, unless the context requires a different definition:

> 'Person' includes corporation, organization, government or governmental subdivision or agency . . . and any other legal entity.

Gov't Code § 311.005(2).

As shown by our discussion of the history of section 26.176(b) of the Water Code, in the context of that provision, "person" must be defined to include governmental agencies. Accordingly, section 26.176(b) of the Water Code expressly authorizes a local government to require users of its sewage disposal system, including a state agency, to pay charges based in part on the capital costs of the system.

The city of Houston may collect a capital recovery fee from a state agency for the use of its waste water system.

### S U M M A R Y

A special assessment is not a tax within article XI, section 9, of the Texas Constitution, which exempts property owned and held for public purposes from taxation. Thus, this provision of the constitution does not prohibit the imposition of a special assessment on a state agency.

In the absence of express statutory authority, a city may not impose a special assessment on a state agency. Section 26.176(b) of the Water Code provides express authority for the city of Houston to charge users of its sewage disposal system, including a state agency, a "capital recovery fee" for certain capital costs of the sewage disposal and treatment system.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General