March 30, 2011

The Honorable Mike Hamilton
Chair, House Committee on Licensing and
    Administrative Procedures
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0850

Re: Whether the Eagle Pass Independent School
District is subject to a municipal ordinance that
requires the District to expend funds for certain
kinds of infrastructure (RQ-0923-GA)

Dear Representative Hamilton:

Your predecessor explained that the City of Eagle Pass (the "City") has informed the Eagle
Pass Independent School District (the "District") that pursuant to a City ordinance the District must
fund the extension of a waterline along the property of a newly completed school in the District.[1]
He then asked whether chapter 395 of the Local Government Code, sections 45.105 and 11.168 of
the Education Code, or article III, section 52 of the Texas Constitution would prohibit the District
from complying with the City's ordinance. Request Letter, *supra* note 1, at 1–2.

The Texas Supreme Court has, on multiple occasions, addressed when school districts are
subject to city regulation. *See Port Arthur Indep. Sch. Dist. v. City of Groves*, 376 S.W.2d 330, 334
(Tex. 1964); *Austin Indep. Sch. Dist. v. City of Sunset Valley*, 502 S.W.2d 670, 674 (Tex. 1973). In
*City of Groves*, the court addressed the applicability of city building regulations to a school district.
*City of Groves*, 376 S.W.2d at 331. Holding that "school buildings . . . are subject to the reasonable
ordinances of the city," the court explained that to "hold otherwise would be to leave a hiatus in
regulation necessary to the health and safety of the community." *Id.* at 334. Ten years later in *City
of Sunset Valley*, the court addressed whether a school district could override city restrictions by
locating a school facility in an area zoned for residential use. *City of Sunset Valley*, 502 S.W.2d at
674. Finding in favor of the school district, the court distinguished the *City of Groves* case,
explaining that the "enforcement of health and safety regulations" was not before the court as it was
in *City of Groves*. *Id.* at 673. This precedent suggests that whether the District must comply with
the ordinance depends in part on whether its enforcement is necessary to the health and safety of the
community. With this general principle in mind, we address the specific statutes about which your
predecessor asked.

---

[1]Letter from Honorable Edmund Kuempel, Former Chairman, House Committee on Licensing and
Administrative Procedures, Texas House of Representatives, to Honorable Greg Abbott, Attorney General of Texas at
1 (Oct. 11, 2010) (on file with the Opinion Committee, *also available at* http://www.texasattorneygeneral.gov)
[hereinafter Request Letter].

We first address the applicability of chapter 395 of the Local Government Code, which authorizes political subdivisions to charge impact fees in certain circumstances. *See* TEX. LOC. GOV'T CODE ANN. § 395.011 (West 2005). An impact fee is defined as "a charge or assessment imposed by a political subdivision against new development in order to generate revenue for funding or recouping the costs of capital improvements or facility expansions necessitated by and attributable to the new development." *Id.* § 395.001(4).[2] Whether any particular fee constitutes an "impact fee" under chapter 395 would require the resolution of facts and, as a result, cannot be determined in an attorney general opinion. Tex. Att'y Gen. Op. No. GA-0637 (2008) at 5. We can advise you, however, that Local Government Code section 395.022(b) "exempt[s] a school district from the payment of mandatory impact fees to a political subdivision under chapter 395" unless certain conditions are met. *Id.* at 3. That provision states:

> A school district is not required to pay impact fees imposed under this chapter unless the board of trustees of the district consents to the payment of the fees by entering a contract with the political subdivision that imposes the fees. The contract may contain terms the board of trustees considers advisable to provide for the payment of the fees.

TEX. LOC. GOV'T CODE ANN. § 395.022(b) (West Supp. 2010). If the City's ordinance imposes an impact fee, the District is not required to pay that fee in the absence of an agreement to do so.

Your predecessor next questioned whether provisions of the Education Code prohibit the District from complying with the City's ordinance. Request Letter, *supra* note 1, at 2–3. Education Code section 45.105 expressly limits how public school funds may be spent. TEX. EDUC. CODE ANN. § 45.105(a) (West 2006). That section enumerates specific purposes for which local school funds may be spent and also includes any "other purposes necessary in the conduct of the public schools *determined by the board of trustees.*" *Id.* § 45.105(c) (emphasis added). One intermediate court analyzed this statute in light of a city's imposition of assessments against a school district for paving streets abutting school property. *See City of Garland v. Garland Indep. Sch. Dist.*, 468 S.W.2d 110, 111 (Tex. Civ. App.—Dallas 1971, writ ref'd n.r.e.).[3] The court explained that school funds could not be spent for that purpose "unless the trustees first determine[d] that such an expenditure [was] 'necessary in the conduct of the public schools.'" *Id.* at 111–12. In reaching this conclusion, the court acknowledged *City of Groves* and distinguished it by explaining that such "reasoning does not

---

[2]The term impact fee includes "amortized charges, lump-sum charges, capital recovery fees, contributions in aid of construction, and any other fee that functions as described by this definition." TEX. LOC. GOV'T CODE ANN. § 395.001(4) (West 2005). It expressly does not include "pro rata fees for reimbursement of water or sewer mains or lines extended by the political subdivision." *Id.* § 395.001(4)(D).

[3]*City of Garland* addressed Education Code section 20.48, which was later recodified as section 45.105. *City of Garland*, 468 S.W.3d at 111–12; *see also* Act of June 2, 1969, 61st Leg., R.S., ch. 889, § 20.48, 1969 Tex. Gen. Laws 2735, 2904–05, *amended by* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, sec. 45.105, 1995 Tex. Gen. Laws 2207, 2439.

apply to assessments for street improvements. The city has the power to make the improvements without any action by the district . . . ." *City of Garland*, 468 S.W.2d at 114.

The City and the District apparently disagree about the purpose of and need for the waterline. Request Letter, *supra* note 1, at 1–2. Determining whether the waterline is necessary for health and safety reasons, as in *City of Groves*, or whether the demanded expenditure is more like the assessment addressed in *City of Garland*, will require a factual inquiry that this office cannot perform. Without such an inquiry, we cannot answer whether the District is subject to the ordinance and what consequences, if any, may arise from a decision not to comply. The District's trustees must determine whether the expenditure is "necessary in the conduct of public schools" and therefore permitted by section 45.105.

Your predecessor also asked about the impact of section 11.168 of the Education Code, which provides that

> the board of trustees of a school district may not enter into an agreement authorizing the use of school district employees, property, or resources for the provision of materials or labor for the design, construction, or renovation of improvements to real property not owned or leased by the district.

TEX. EDUC. CODE ANN. § 11.168 (West 2006). As this office has previously explained, for this "prohibition to apply to a school district's use of its resources, there must be, minimally, *an agreement* controlling that use." Tex. Att'y Gen. Op. No. GA-0496 (2006) at 2 (emphasis added) (explaining that municipal impact fees are imposed, not agreed to). In GA-0496, we addressed a city's imposition of an impact fee on a school district and explained that such imposition "is a unilateral action that does not involve . . . [and] is not paid as a result of an agreement." *Id.* at 3. To the extent that the City ordinance at issue here imposes unilateral action, section 11.168 would be similarly inapplicable due to the lack of an agreement.

However, we note that the Legislature enacted subsection 395.022(b) of the Local Government Code, addressed above, after GA-0496 was issued "to mitigate the implication . . . that a school district must pay an impact fee because such a fee is *imposed* rather than being the subject of an agreement." Tex. Att'y Gen. Op. No. GA-0637 (2008) at 2; *see also* Act of May 11, 2007, 80th Leg., R.S., ch. 250, § 1, 2007 Tex. Gen. Laws 356, 356 (enacting section 395.022(b) of the Local Government Code). As we discussed in GA-0637, section 395.022(b) could be construed to conflict with Education Code section 11.168. Tex. Att'y Gen. Op. No. GA-0637 (2008) at 2–3. To the extent of a conflict, section 395.022(b) prevails, allowing a school district's board of trustees to consent to an impact fee by entering into a contract with the entity imposing the fee. *Id.*

Finally, your predecessor raised concerns about a possible violation of article III, section 52 of the Texas Constitution, which prohibits the Legislature from authorizing any political subdivision of the state "to lend its credit or to grant public money or a thing of value in aid of, or to any individual, association or corporation." TEX. CONST. art. III, § 52(a). A political subdivision's

payment is not gratuitous if it receives return consideration or obtains a clear public benefit in return. *Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 383–84 (Tex. 2002).   Whether a particular transfer of funds to the City is exchanged for consideration or serves a public purpose of the District is for the District to determine in the first instance.  Tex. Att'y Gen. Op. No. GA-0664 (2008) at 4.

## S U M M A R Y

Pursuant to Local Government Code subsection 395.022(b), if it is determined that a City of Eagle Pass ordinance imposes an impact fee under chapter 395, the Eagle Pass Independent School District is not required to pay that fee in the absence of an agreement to do so.

The District's trustees must determine whether the expenditure for a waterline is "necessary in the conduct of public schools" and therefore permitted under Education Code section 45.105.

To the extent that the City ordinance at issue imposes unilateral action, Education Code section 11.168 is inapplicable to the issue of whether the District must comply with the City ordinance.

If the District determines that paying for city-requested infrastructure accomplishes a public purpose of the District and that it otherwise meets the requirements established by the Texas Supreme Court, the District's expenditure of funds for city-mandated infrastructure will not violate article III, section 52 of the Texas Constitution.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel

JASON BOATRIGHT
Chair, Opinion Committee

Virginia K. Hoelscher
Assistant Attorney General, Opinion Committee