OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



January 12, 2000

The Honorable José R. Rodríguez
El Paso County Attorney
500 East San Antonio, Room 203
El Paso, Texas 79901

Opinion No. JC-0165

Re:    Constitutionality of "early exit" plan for school district employees, and related questions (RQ-0055-JC)

Dear Mr. Rodríguez:

You ask a number of questions regarding an independent school district's proposed implementation of an "early exit" plan for school district employees. In essence, you ask whether the plan would be valid under Texas law and, if not, what changes would make it valid. While we conclude that the school district may be able to fashion a plan that meets the district's goals and complies with state law, we do not determine whether the plan as you have described it is legal in all respects. As a general rule, a school district has only those powers expressly conferred on it by law or necessarily implied from powers so conferred. *See Harlingen Indep. Sch. Dist. v. C.H. Page & Bros.*, 48 S.W.2d 983, 986 (Tex. Comm'n App. 1932, holding approved). A definitive determination of whether the plan you describe is authorized by law would require a thorough review of the complete details of the entire plan in light of the particular school district at issue and the particular facts surrounding the plan. Such a determination would best be made by a legal advisor to the district who is in a position to review a proposed plan and fully analyze the applicable state and federal laws with the necessary factual information at hand. This office normally does not construe contracts nor make findings of fact in the opinion process. *See* Tex. Att'y Gen. Op. Nos. JC-0152 (1999) at 12; JM-697 (1987) at 7.

You tell us: "The board of trustees of an independent school district organized under Texas law (the "District") is considering adoption of a plan whereby one or more employees of the District meeting certain eligibility requirements and agreeing to participate in the plan would receive certain payments from the District in the future in exchange for the "early exit" of the employee (the "Plan")." Letter from Honorable José R. Rodríguez, El Paso County Attorney, to Honorable John Cornyn, Texas Attorney General, at 1 (Apr. 19, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"]. To be eligible, an employee must be on active service and have more than ten total years of employment with the District. *Id.* The Plan would apply to all District employees, which are of four types: continuing-contract employees, term-contract employees, one-year contract employees, and at-will employees. *Id.* at 1-2.

An eligible employee must exit the District by retirement or resignation within the three-year exit period of the Plan. If the employee exits in the first year, he will receive payments totaling 105% of his basic annual salary. If he leaves in the second year, he will receive one hundred percent of his salary, and if he leaves in the third year he will receive ninety-five percent of his salary. In each case, the salary will be paid in equal monthly installments over a period of eight years beginning on the exit date. A participating employee who is eligible for retirement will also be paid one hundred percent of his accumulated sick leave in three installments over a period of approximately twenty-four months. The current District policy, you tell us, is to pay a retiring employee fifty percent of his accumulated sick leave in a lump sum immediately upon exit or soon thereafter. *Id.* at 2.

Eligible employees will be given a short period in which to apply for participation in the Plan before the Plan's first year. "Once the 'window' period closes, Plan eligibility for remaining employees immediately ceases, and no further participation in the Plan will be allowed by the District." *Id.*

Employees must agree to other terms in exchange for the payments. "Under the Plan, a participant would be required to execute a release and waiver of all preretirement claims against the District, including without limitation any claims for race, sex, age, disability, ethnicity, or other discrimination, and would be required to agree not to seek reemployment in the future with the District without the District's consent." *Id.* at 2. The Plan might also include a "future performance" requirement whereby the employee must perform five to eight days of service for the District in each of the eight years during which payments are being made. *Id.* You tell us that because payments under the Plan would be made during the course of a number of different fiscal years, the Plan would include a "non-appropriation clause." *Id.*

The purpose of the Plan is to save money:

> Based upon current feasibility studies, the District believes that, through the operation of the Plan, a significant number of higher-paid, more-experienced employees will choose to participate in the Plan and retire or resign from the District sooner than they might otherwise do. As such, the District expects to be able to replace such early retirees/resignees with entry-level or less experienced [yet still competent] persons with lower salaries or wages. The District hopes to achieve substantial savings by virtue of the "spread" between the salaries or wages of the early retirees/designees and the lower salaries or wages of their replacements. The District feels that the Plan will prove financially beneficial to the District. The District is interested in implementing the Plan because of the anticipated savings.

Request Letter, *supra*, at 3.

With this background, we turn to your questions.

Question No. 1

> Is the Plan in its stated form valid under the Texas Constitution?
> Would your answer change if one or more of the four categories of
> employees were excluded from eligibility under the Plan? Would
> your answer change if the Plan limited eligibility to employees who
> are age 40 or above [i.e.- potential claimants based upon age under
> the Age Discrimination in Employment Act and under Texas Labor
> Code § 21.051 et. seq.]?

Question No. 2

> With respect to eligible employees who participate in the Plan during
> the term of their existing contracts, is the Plan in its stated form valid
> under the Texas Constitution? Would your answer change if the Plan
> limited such persons from electing early resignation or retirement
> until the second or third year of the Plan and required continuing
> performance of services for the District until such time? Would your
> answer change if one or more of the four categories of employees
> were excluded from eligibility under the Plan?

While you ask about the Plan's validity under the Texas Constitution generally, your letter suggests that you are concerned in particular about constitutional prohibitions on the gratuitous grant of public funds to private individuals. Article III, section 52 of the Texas Constitution prohibits the legislature from authorizing "any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association, or corporation whatsoever." TEX. CONST. art. III, § 52(a). Article III, section 53 provides that the legislature "shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered, or a contract has been entered into, and performed in whole or in part." *Id.* § 53; *see also Harlingen Indep. Sch. Dist.*, 48 S.W.2d at 986 (article III, section 53 applies to school districts). And article XVI, section 6 prohibits appropriations of public funds for private or individual purposes, TEX. CONST. art. XVI, § 6, although it does not bar expenditures made for the direct accomplishment of a legitimate public purpose, *see Byrd v. City of Dallas*, 6 S.W.2d 738, 740 (Tex. 1928). Plainly stated, these provisions prohibit a school district from using public funds to give away something for nothing.

Because your question involves compensation to public employees, we focus our analysis on the constitutional provision that prohibits a school district from granting extra compensation to a public employee after services have been rendered or a contract entered into and performed in whole or part. TEX. CONST. art. III, § 53. Payments made after a service or contract has been

performed are normally considered to be "extra compensation" where no consideration is offered by the payee for the additional payments. *See, e.g., City of Greenville v. Emerson*, 740 S.W.2d 10, 13 (Tex. App.–Dallas 1987, no writ). However, where the payee offers additional consideration for the additional payments, there is no violation of this constitutional prohibition. *See* Tex. Att'y Gen. Op. No. MW-68 (1979) at 1. Consequently, payments under the Plan by the school district would not be unconstitutional if the district received consideration from participating employees in return for the payments. Consideration for a valid agreement is defined as either a benefit to the promisor or a loss or detriment to the promisee. *See Northern Natural Gas. Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex. 1998).

For example, courts have long held that the performance of employment duties is consideration for retirement benefits, accumulated leave payments, and other post-employment payments that are part of the terms of employment, and therefore such payments are not unconstitutional gratuities. *See, e.g., Byrd*, 6 S.W.2d at 740; *City of Galveston v. Landrum*, 533 S.W.2d 394, 397 (Tex. Civ. App.–Houston [1st Dist.] 1976, writ ref'd n.r.e.); *Devon v. City of San Antonio*, 443 S.W.2d 598, 600 (Tex. Civ. App.–Waco 1969, writ ref'd); *City of Orange v. Chance*, 325 S.W.2d 838, 840 (Tex. Civ. App.–Beaumont 1959, no writ); *City of San Antonio v. Baird*, 209 S.W.2d 224, 225 (Tex. Civ. App.–San Antonio 1948, writ ref'd). Surrendering a legal right has also been held to be valid consideration. *See Northern Natural Gas Co.*, 986 S.W.2d at 607. Accordingly, the District may constitutionally be able to offer the Plan to employees who are currently working under a contract with the District.

The contract may be amended or a new contract entered into, provided new consideration is given. In *City of Greenville v. Emerson*, the court held that a new contract with city employees "to pay them additional benefits above what they received under a prior valid existing contract for no additional consideration" would contravene the constitution. *City of Greenville v. Emerson*, 740 S.W.2d at 13. This statement implies that a new contract with new consideration would have been valid. And in Attorney General Opinion MW-68, this office considered whether the constitution prohibited a school district from increasing contract teachers' salaries after the teachers had begun performing under their contracts. Tex. Att'y Gen. Op. No. MW-68 (1979) at 1. Certainly, the opinion stated, additional compensation could not be paid for past services rendered. "The school board may, however, renegotiate a contract already performed in part where new consideration passes to the district in exchange for new benefits provided." *Id.* at 2.

In our view, the consideration for an employee's participation in the Plan you have described would be those things in the Plan to which the employee agrees: leaving employment, waiving discrimination claims, foregoing future employment with the District, and the like. The District benefits from the savings in salaries, the release of discrimination claims, and other things that you list in your letter. In other words, the employees would provide consideration, and the District would not give away something for nothing.

Whether any particular employee provides valid consideration to the school district for payments under the Plan will depend upon the particular facts surrounding that employee and may,

as your question suggests, depend upon the type of employee. You tell us that the Plan would apply to all four types of District employees: at-will employees, one-year-contract employees, term-contract employees, and continuing-contract employees.

Every teacher, principal, librarian, nurse, or counselor must be employed under a contract. TEX. EDUC. CODE ANN. § 21.002 (Vernon 1996). Other employees may work at the will of the District. *Id.* At-will employees are employees who work without a contract and who may be discharged at any time. *See Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501 (Tex. 1998). Probationary-contract employees are employed for a contract term not exceeding one school year. TEX. EDUC. CODE ANN. § 21.102 (Vernon 1996). A term-contract employee is employed by a district for a fixed term not to exceed five school years, at which point the contract may be renewed. *Id.* §§ 21.201, .205-.209. A continuing-contract employee need not have his or her contract renewed in order to continue working for the district: "Each teacher employed under a continuing contract is entitled to continue in the teacher's position or a position with the school district for future school years without the necessity for annual nomination or reappointment" until the person's employment ends by resignation, retirement, discharge, or by several other listed means. *Id.* § 21.154.

In order for the Plan to be constitutional with respect to a particular employee, the District must receive valid consideration from the employee for payments under the Plan. The consideration given by an employee will vary with each employee depending upon the employee's current employment status with the District. Thus, payments under the Plan must be commensurate with the consideration given by each employee. For example, an at-will employee, who as a general rule could be terminated at any time, and thus, need not be offered an incentive to leave, in agreeing to resign does not provide the same level of consideration, and thus would not be entitled to the same level of payments as an employee with five years remaining on her contract. Any promise to or from an at-will employee is "illusory" and does not constitute consideration if the promise depends upon a period of continued employment, because either the employer or employee may terminate the employment at will. *See Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 644 (Tex. 1994). "At-will employees may contract with their employers on any matter except those which would limit the ability of either employer or employee to terminate the employment at will." *Id.*

The constitutional validity of the Plan will depend upon the existence of an enforceable agreement supported by adequate consideration with each participating employee. There must be evidence that the school district and participating employees formed an agreement before the employee performs the consideration offered and before payments under the Plan begin. We believe that a contract that lacks specific identification of enforceable consideration offered by the employee will not support payments under the Plan and will render the Plan unconstitutional at least as to that employee. Whether any particular employee provides consideration to the District in return for payments under the Plan is a question of fact beyond the scope of the opinion process.

You also ask whether our answer would change if the Plan were limited to employees who are age forty or above, that is, those who are potential age-discrimination claimants. You tell us that release of age discrimination claims would be of significant benefit to the District. Request Letter,

*supra*, at 2. As we have said, surrendering a legal right can constitute valid consideration. *See Northern Natural Gas. Co.*, 986 S.W.2d at 607. Thus, with respect to those employees who are potential claimants, the District would receive consideration in return for the post-employment payments. And, provided some other consideration is given for the payments, a Plan that includes an age-discrimination waiver for all eligible employees is not necessarily invalid with respect to employees who are under age forty and thus not potential age-discrimination claimants.

Nor would offering the Plan only to employees aged forty and above necessarily violate federal and state anti-discrimination laws. The federal Age Discrimination in Employment Act ("ADEA") forbids an employer to, among other things, "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (1994). A "discharge" within the meaning of the ADEA may be constructive if a reasonable person in the employee's position would have felt compelled to resign under the circumstances. *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1214 (5th Cir.), *cert. denied*, 506 U.S. 820 (1992). "An attractive early retirement offer, however, is not a constructive discharge merely because it creates a strong incentive to retire; an early retirement option can constitute a constructive discharge only if the employee shows that it sufficiently alters the status quo that each choice facing the employee makes him worse off." *Id.*; *see* 29 U.S.C. § 623(f)(2)(B)(ii) (1994). The same rule would apply to an age discrimination case brought under the Texas Commission on Human Rights Act ("TCHRA"), which also bars employment discrimination on the basis of age. *See* TEX. LAB. CODE ANN. § 21.051 (Vernon 1996); *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 251 (Tex. App.–Houston [1st Dist.] 1993, writ denied) (courts may look to federal case law interpreting Title VII when determining burdens of proof under TCHRA). Thus, we find no law that would render the Plan invalid merely because it is offered only to older employees with a requirement that they waive age-discrimination claims.

While general releases of employment claims are normally enforceable, *see Rogers v. General Elec. Co.*, 781 F.2d 452, 454-55 (5th Cir. 1986), they have their limitations. For example, an employee may validly release only those federal Title VII claims that arise from discriminatory acts that precede the date of execution of the release. *Id.* at 454. Some federal employment discrimination statutes have particular requirements that must be met to create a valid release. *See, e.g., Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998) ("An employee 'may not waive' an ADEA claim unless the employer complies with the statute."). And certain claims may not be waived at all. For example, a pre-injury release of a claim for gross negligence is void as against public policy. *See Memorial Med. Ctr. of East Texas v. Keszler*, 943 S.W.2d 433, 435 (Tex. 1997). And, certainly, a release will not be enforceable if it was entered into under duress, fraud, mistake, or the like. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997). A waiver that is not enforceable will not constitute consideration for the Plan. Whether any particular waiver will be enforceable will depend upon the particular terms of the waiver, the facts surrounding its execution, and the alleged injury for which the waiver is asserted.

Question No. 3

> Is the "future performance" requirement of the Plan essential to its validity under the Texas Constitution? Would your answer change if the Plan excluded the "future performance" requirement for continuing contract and/or term contract employees? Would your answer change if one or more of the four categories of employees were excluded from eligibility under the Plan?

Question No. 4

> If a participant is unable to meet the "future performance" requirement due to death or disability, is it valid under the Texas Constitution for the Plan to still provide for payment of benefits in the future to the participant or his/her beneficiary? Would your answer change if one or more of the four categories of employees were excluded from eligibility under the Plan?

Question No. 5

> If a participant is unable to meet the "future performance" requirement for any reason, is it valid under the Texas Constitution for the Plan to mandate forfeiture of future, but not past, payments under the Plan? Would your answer change if one or more of the four categories of employees were excluded from eligibility under the Plan?

We understand from your questions that the purpose of the future performance requirement would be to create consideration for payments under the Plan in order to make it constitutional. As we understand the District's approach, the payments would be made not for work already performed, but for work to be performed in the future.

In our view, the future performance requirement is not essential to the Plan's constitutional validity with respect to any of the categories of employees, provided other consideration is given for payments under the Plan. You also ask about the effect of a participating employee's inability to meet the future performance requirement due to death, disability, or any other reason. If an employee is unable to meet the future performance requirement for any reason, payments to the employee do not necessarily become unconstitutional, since the future performance requirement is not essential to the Plan's constitutionality. However, nothing in the constitution prohibits the District from including in the Plan a provision by which payments are discontinued if the employee cannot perform.

Question No. 6

>Would the Plan be valid under the Texas Constitution if the sick leave payment under the Plan to a participant consisted of 100% of his/her accumulated sick leave payable over 24 months, as opposed to the current District policy of payment of 50% of his/her accumulated sick leave in a lump sum? Would your answer change if one or more of the four categories of employees were excluded from eligibility under the Plan?

You ask whether inclusion in the plan of a sick leave policy that differs from the current sick leave policy would render the Plan unconstitutional. A change in a sick leave policy may not be made so as to provide additional benefits for work already performed. *See Ward v. City of San Antonio*, 560 S.W.2d 163, 165-66 (Tex. Civ. App.–San Antonio 1978, writ ref'd n.r.e.); Tex. Att'y Gen. Op. No. DM-129 (1992) at 3. However, like other employment benefits, new sick leave policies are not unconstitutional if they form part of the employee's compensation or if the employee otherwise offers additional consideration for the policy. *See* Tex. Att'y Gen. Op. No. MW-221(1980) at 3-4.

In *Ward v. City of San Antonio*, the court considered the effect of a new state law that allowed city fire fighters to be compensated for all of their accumulated sick leave upon retirement. The new law became effective on September 1, 1975. Under the old law, retiring fire fighters could be compensated only for no more than ninety days of accumulated sick leave. The court held that although retirees could be compensated for all of their sick leave accumulated after September 1, 1975, they could not be paid for more than ninety days of leave that accumulated before that date.

>The contract between the parties to this suit prior to September 1, 1975, was for the payment of only 90 days of accumulated sick leave and an effort to apply the provision of the September 1, 1975 amendment to accumulated sick leave in excess of 90 days earned prior to September 1, 1975, would impair the obligation of the contract as it then existed. . . . . The payment of more than 90 days sick leave accruing prior to September 1, 1975, would be in violation of Art. 3, § 53 of the Texas Constitution.

*Ward*, 560 S.W.2d at 165-66.

In *Ward*, the terms of the earlier contract did not change, and thus additional sick leave payments would have constituted extra compensation under that contract with no additional consideration from the fire fighters. By contrast, under the District's proposed plan, participating employees would provide consideration for payments under the Plan. Consequently, we do not believe the Plan's amended sick leave policy renders the Plan unconstitutional.

Question No. 7

> If you believe that the Plan as stated is unconstitutional, but that a particular combination of the above-stated basic, additional, or alternative elements or features of the Plan would render the Plan valid under the Texas Constitution, what are such combination(s)?

We believe that the Plan you describe may be created in a way that does not violate the Texas Constitution. As we have said, however, we are unable to craft a plan for the District in the opinion process. While we can advise you on the general legal principles implicated by the proposal, it is for the District to determine how it wishes to meet its objectives in compliance with the law and in light of the particular factual circumstances at hand.

Question No. 8

> Are the payments to be made under the Plan an authorized expenditure of the District's funds under Section 45.105 of the Texas Education Code, assuming that the District's Board of Trustees determines that it is in the best interests of the District to implement the Plan because of the anticipated compensation and wage savings?

Public funds may not be spent by a school district except as provided by section 45.105 of the Education Code. TEX. EDUC. CODE ANN. § 45.105(a) (Vernon Supp. 2000). State and county school funds, which are appropriated to school districts from the state permanent school fund, may be used only for the payment of teachers' and superintendents' salaries and for any interest on money borrowed to pay those salaries. *Id.* § 45.105(b). We do not believe that payments under the Plan you describe are "salaries" for which state and county funds may be used. But local school funds, which come from taxes and other local sources, may be used for salaries and "for other purposes necessary in the conduct of the public schools determined by the board of trustees." *Id.* § 45.105(c).

In addition to the authority under section 45.105 to expend local funds for salaries and other necessary purposes, school districts have authority over the management of districts in general and over employment policies in particular. "The [board of] trustees as a body corporate [has] the exclusive power and duty to govern and oversee the management of the public schools of the district." *Id.* § 11.151(b). With respect to school district employees, "[t]he board of trustees of each independent school district shall adopt a policy providing for the employment and duties of district personnel." *Id.* § 11.163(a). The employment policy may specify the terms of employment with the district. *Id.* § 11.163(c).

Construing the predecessor statutes to sections 45.105, 11.151(b), and 11.163(c), this office concluded that school districts have implied authority to pay employees for accrued sick leave. *See* Tex. Att'y Gen. Op. No. DM-48 (1991) at 3. "Clearly, the Education Code authorizes a board of trustees to hire employees and to set the terms and conditions of their employment, including their

benefits and compensation. We believe these provisions confer upon boards of trustees the implied power to adopt policies allowing payment for unused sick leave." *Id.* at 2.

Additionally, several courts and numerous opinions of this office have concluded that school district trustees have wide latitude to determine what expenditures are "necessary" for public schools and thus within the spending authority of section 45.105(c) of the Education Code and its predecessor, former section 20.48 of the Education Code. *See, e.g., City of Garland v. Garland Indep. Sch. Dist.,* 468 S.W.2d 110, 111-12 (Tex. Civ. App.–Dallas 1971, writ ref'd n.r.e.) (stating that trustees could determine whether expenditure for paving streets abutting school property is "necessary in the conduct of the public schools"); Tex. Att'y Gen. Op. Nos. DM-48 (1991) at 3 (concluding that trustees have "broad discretion to expend local school funds"); JM-1265 (1990) at 4 (concluding that trustees might find college scholarships to be "necessary" in the conduct of the public schools"); JM-490 (1986) at 2 (concluding that trustees could determine that crossing guards are "necessary"); H-133 (1973) at 5, 7 (trustees could determine that travel and legal expenses of trustees were "necessary"); C-601 (1966) at 3-4 (concluding that trustees have discretion to determine whether expending surplus money from operation of school cafeteria to provide lunches to needy pupils is "necessary cost in the efficient conduct of its public schools"); Tex. Att'y Gen. LO-93-93, at 4 (concluding that trustees might find use of local school funds to provide college scholarships to be "necessary in the conduct of the public schools").

In our view, the authority of a school district to hire employees, set their compensation, and establish the terms of their employment could include the authority to offer the type of "early exit" incentive you describe. Furthermore, section 45.105(c) broadly authorizes a school district to expend local funds "for other purposes necessary in the conduct of the public schools determined by the board of trustees." TEX. EDUC. CODE ANN. § 45.105(c) (Vernon Supp. 2000) . While the determination as to what constitutes a necessary expenditure of public funds is to be made by a school district in the first instance, we caution that a district's decision is subject to judicial review. *See* Tex. Att'y Gen. Op. No. H-133 (1973) at 4. Again, we do not determine whether the particular plan you have described in all respects constitutes a permissible expenditure by a school district.

Question No. 9

> Does the Plan constitute a "deferred compensation plan" within the meaning of Section 609.001 et. seq. of the Texas Government Code?

Question No. 10

> May an independent school district adopt a deferred compensation plan that does not comply with Section 609.001 et. seq. of the Texas Government Code?

Finally, you ask whether the Plan is a "deferred compensation plan" within the meaning of chapter 609 of the Government Code, *see* TEX. GOV'T CODE ANN. ch. 609 (Vernon 1994 & Supp.

1999), and whether the District may create a deferred compensation plan that does not comply with chapter 609.

For purposes of chapter 609 of the Government Code, a "deferred compensation plan" for employees of political subdivisions "means a plan established under [subchapter B of chapter 609]." *Id.* § 609.101 (Vernon 1994). Subchapter B of chapter 609 provides for the establishment of a 401(k) plan or a 457 plan for political subdivision employees. *Id.* § 609.102. A 401(k) plan is a deferred compensation plan governed by section 401(k) of the Internal Revenue Code, and a section 457 plan is a deferred compensation plan governed by section 457 of the same code. *Id.* § 609.001(10), (11); *see* 26 U.S.C. §§ 401, 457 (1994). To establish a 401(k) or 457 plan, an employer must meet a lengthy series of detailed requirements. *See* 26 U.S.C. §§ 401, 457 (1994). Generally speaking, these plans involve contributions to a trust fund by the employer, the employee, or both. Federal income taxes on contributions to these plans are deferred until the contributions are paid from the fund to the employee, usually upon retirement or other separation from employment.

Certainly, if the District intends to adopt a deferred compensation plan as that term is defined by chapter 609, the District may do so only in compliance with chapter 609. Furthermore, a school district may not adopt an analogous plan unless specifically authorized by law to do so. *See* Tex. Att'y Gen. Op. No. JM-1142 (1990) at 26. For example, Attorney General Opinion JM-1142 concluded that absent express statutory authority, an appraisal district had no implied authority to create a local pension plan where state law specifies pension plans or retirement systems in which an appraisal district may participate. *Id.* However, we doubt that the Plan about which you ask can be described as "deferred compensation" either within the meaning of chapter 609 or within the ordinary meaning of that term.

To be deferred compensation within the meaning of chapter 609, the Plan must be a 401(k) plan or a 457 plan. While the details of the federal tax statutes make us unable to determine with absolute certainty whether the District's Plan is a 401(k) or 457 plan, from a review of the requirements it does not appear to us that the Plan constitutes either one of these plans. For example, a 401(k) plan must be a pension, profit-sharing, or stock bonus plan, *see* 26 U.S.C. § 401(a) (1994), and a pension plan is described by the Internal Revenue Service as "a plan established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits to his employees over a period of years, usually for life, after retirement." 26 C.F.R. § 1.401-1(b)(1)(i) (1999). The IRS has said that the term "plan" implies a permanent as distinguished from a temporary program. *Id.* § 1.401-1(b)(2). You have told us that the District's early exit Plan will be offered only for a limited time. Furthermore, you have not told us that either the District or participating District employees will make contributions to a trust fund for later payments under the Plan. Consequently, we doubt that the District's Plan is a deferred compensation plan within the meaning of chapter 609 of the Government Code.

While the phrase "deferred compensation plan" has a particular meaning for the purposes of chapter 609 and for federal tax purposes, the phrase can also describe other types of plans whereby an employee's compensation is earned or determined at one point in time, but is actually paid to the

employee at a later time. In a divorce case, a court described deferred compensation as something that is earned or accrued during the course of the employee's service. *See Whorrall v. Whorrall,* 691 S.W.2d 32, 37-38 (Tex. Civ. App.–Austin 1985, writ dism'd). Thus, the court held, a "special payment" made for the purpose of encouraging an employee to retire early so as to eliminate an unproductive position was not deferred compensation. As you describe the school district's plan, the payments would not constitute compensation for work performed during an employee's term of employment, but would in essence constitute compensation for *leaving* employment, like the "special payment" in *Whorrall.* Thus, we doubt whether the Plan can be characterized as "deferred compensation."

## S U M M A R Y

An independent school district's "early exit" plan for school district employees, whereby certain employees of the district receive payments from the district in return for leaving employment and other agreements, is not an unconstitutional gratuity if participating employees provide consideration to the district for payments under the plan. Such a plan may be authorized by sections 11.163 and 45.105 of the Education Code.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Barbara Griffin
Assistant Attorney General - Opinion Committee